Guy ROSE, Appellant,

v.

GREAT NORTHERN RAILWAY COMPANY, and International Brotherhood of Firemen and Oilers, Helpers, Roundhouse and Railway Shop Laborers, Appellees.

No. 16087.

United States Court of Appeals
Eighth Circuit.

June 30, 1959.

See, also, D.C., 151 F.Supp. 806.

Robert Vaaler, Grand Forks, N. D. (Day, Stokes, Vaaler & Gillig, Grand Forks, N. D., on the brief), for appellant.

Richard R. Lyman, Toledo, Ohio, and J. R. Walker, St. Paul, Minn. (Anthony Kane, St. Paul, Minn., Herbert G. Nilles, Fargo, N. D., and Harold D. Shaft, Grand Forks, N. D., with them on the brief), for appellees.

Before GARDNER, Chief Judge, and WOODROUGH and MATTHES, Circuit Judges.

WOODROUGH, Circuit Judge.

There was diversity of citizenship between the parties in this case and more than three thousand dollars exclusive of interest and costs in controversy.

The plaintiff alleged in his amended complaint that he

"*entered the employ of the defendant on or about the 10th day of*

*September, 1928, and thereafter
worked in various capacities until
March 3, 1954, at which time [he]
was laid off by defendant in the re-
duction of forces. That thereafter
[he] sought to continue his employ-
ment with the defendant railway
company and to exercise his senior-
ity rights accorded him by virtue
of collective bargaining agreements
in force at that time and accrued
under prior agreements [but] the
plaintiff has been denied and refused
his rights to employment and [he]
has been wrongfully discharged."*

He claimed under these allegations that although he was at the time of his lay off and had been for many prior years working as a "boilermaker helper" following his promotion from his job as "laborer" and had been carried as boilermaker helper on all rosters, he still had seniority rights as "laborer" which entitled him to have the railroad "bump" a laborer with less seniority and let plaintiff take over that laborer's work. By the allegation that he had been wrongfully *discharged* plaintiff did not mean to assert that while he was working as a laborer the company fired him from that job, but that the company's denial of his claim to have seniority right as a "laborer" and its refusal to bump some employed laborer, constituted an actionable "discharge" of him from a laborer's job. So far from claiming that he had been discharged in 1954 in the sense of a severance at that time of the existing master and servant relation between the railroad and himself, it was not until February 12, 1958, four years after the alleged discharge date that he wrote the company in order to obtain his retirement annuity: "Please accept my resignation from the services of the Great Northern Railway Company, effective Nov. 5, 1957."

He specified in the complaint particulars of damages resulting to him from the alleged *discharge* as laborer in the sum of thirty thousand dollars and prayed judgment against the railroad for that amount together with interest and costs.

Issues were joined by the railroad. It admitted the existence of collective bargaining agreements governing plaintiff's employment but denied that they accorded plaintiff any seniority right in the class of "laborer" at the time of the lay off in 1954 or thereafter. It alleged that proper interpretation and application of the agreements precluded such claim on his part. It also pleaded that as plaintiff's cause of action was based on interpretation or application of the collective bargaining agreements as averred in the complaint, the sole jurisdiction to determine and apply these agreements was vested in the National Railroad Adjustment Board. That said Board by an award and order duly issued on May 8, 1958, in Docket No. 2952-I, 2-GN-1-'58, designated as Award No. 2839, duly determined that plaintiff did not possess any of the "seniority rights in the laborers' classification" which he attempted to exercise as alleged in his complaint herein and sustained the action of defendant in denying plaintiff the exercise "of seniority as a roundhouse laborer on March 3, 1954, on the grounds that he did not have seniority as a roundhouse laborer". That said award is binding and conclusive against plaintiff's claim and the District Court was without jurisdiction over the subject matter of this suit.

The labor union intervenor also joined issue on the allegations of the complaint. It is the same labor union which became on November 15, 1938, and has ever since been the collective bargaining representative under the Railway Labor Act of all employees of defendant railroad in the laborers' craft or class. It alleged that plaintiff has never possessed or been recognized by the Brotherhood or the railroad as possessing any seniority rights as a laborer since the union became collective bargaining representative for that class. That such seniority rights have at all times been established and administered by the use of rosters published and posted at each point of

employment. That on June 4, 1934, plaintiff was promoted from "laborer" to "boilermaker helper" and so remained holding seniority rights of that class subject to terms and conditions of employment prescribed by collective bargaining agreements separate and distinct from those applicable to laborers' craft negotiated by a different organization and conferring rights not within the laborers' craft. That plaintiff's name has never been included in the roster of laborers since 1937 and he has never complied with the prescribed requirements to cause inclusion of his name thereon although fully informed of its exclusion. That any recognition of plaintiff's claimed right of seniority as laborer by the railroad or by the union would necessarily inure to the detriment of employees who are and for years have been working as laborers and relying upon the inclusion of their names in the annually published and posted seniority rosters of laborers.

The union also pleaded that the plaintiff "in failing, for a period of approximately fifteen years, to protest his known omission from such laborers' rosters, and, had such protest been ineffective, to submit his dispute to the National Railroad Adjustment Board, a tribunal available to him during such period and having full power to order his name to be listed on the laborers' roster had it found him entitled to such listing, plaintiff has been guilty of such inexcusable delay as to bar him, by waiver, laches, and limitations, from maintaining this action."

There was a jury trial of the case and at the conclusion of all the evidence the plaintiff moved the court to instruct the jury to return a verdict in his favor against defendant. The court overruled the motion. Then the defendant and the intervenor each moved the court to instruct the jury to return a verdict of dismissal against the plaintiff. Thereupon the court sustained that motion and instructed the jury that the motion of the railway company, joined in by the intervenor, should be and was granted and that the jury should return a verdict of dismissal of the action. In accord with the verdict so returned, judgment of dismissal of the action with costs was entered and plaintiff appeals.

The facts are established by answers to interrogatories, oral testimony of the plaintiff, of the branch manager for the Railroad Retirement Board, of one Donald James who was a "boilermaker helper" in defendant's employ, a "local [labor] union chairman" whose function had been to sign seniority lists prepared by defendant for 1937 and 1938, and of one David H. Jones who testified as to life expectancy of plaintiff. Numerous excerpts from the contracts resulting from collective bargaining between the railway company and the labor unions were also received in evidence. Duly certified copy of the proceedings before the National Railroad Adjustment Board and the duly certified copy of the award of the Board above referred to were offered in evidence.

The appellant has summarized the evidence with care in the brief filed in his behalf and the appellees "amplified his recital of facts" from their supplemental record without disputing appellant's narrative. The evidence on which the District Court directed the verdict of dismissal is therefore brought clearly before us. The Court did not indicate the grounds on which it rested decision so that our inquiry is whether the ruling on the motions for peremptory instruction was proper.

We indicate in the opinion the facts which are relevant to and control decision, and hold that the judgment appealed from should be affirmed because:

(1) The District Court lacked jurisdiction of the controversy which was vested under the Railway Labor Act as amended (45 U.S.C.A. § 151 et seq.) in the National Railroad Adjustment Board;

(2) The submission of the dispute to that Board and the determination and award by the Board in favor of the railroad was conclusive against the plaintiff;

(3) Plaintiff was in fact not wrongfully discharged in 1954.

### 1. Lack of Jurisdiction.

■ Section 153 of the Act includes in the cases which come within the jurisdiction of the Labor Relations Adjustment Board the disputes between an employee and a carrier which grow out of the interpretation or application of the collective bargaining agreements which plaintiff pleaded and relied on and the certified copy of the proceedings before the Board established that dispute had been duly submitted to the Board by the railroad and that the Board made determination and award against the plaintiff as averred in the answers of defendant and intervenor. The Court did not receive the certified copy in evidence but it was proffered and is included in the record before us.[1] As the case was dismissed pursuant to the motion for a directed verdict, this Court "in considering whether the trial Court should have sustained defendant's motions for directed verdicts * * * will look to all competent evidence, including facts

---

1. "National Railroad Adjustment Board
Second Division
"Parties to Dispute:
{ Great Northern Railway Company
Guy H. Rose, Boilermaker-Helper
"Dispute: Claim of Carrier:
"Claim of Great Northern Railway Company, that it be sustained in its action in denying Boilermaker Helper Guy Rose the exercise of seniority as a roundhouse laborer on March 3, 1954, on the grounds that he did not have seniority as a Roundhouse Laborer.
"Findings:
"The Second Division of the Adjustment Board, upon the whole record and all the evidence, finds that:
"The carrier or carriers and the employe or employes involved in this dispute are respectively carrier and employe within the meaning of the Railway Labor Act as approved June 21, 1934.
"This Division of the Adjustment Board has jurisdiction over the dispute involved herein.
"The parties to said dispute were given due notice of hearing thereon.
"This dispute was initiated by Boilermaker Helper Guy Rose in an effort to displace employes who held seniority and positions as roundhouse laborers after he was furloughed as a boilermaker helper on March 3, 1954.
"In accordance with the Railway Labor Act as amended the carrier progressed this dispute to the Second Division of the National Railroad Adjustment Board. Hearing was held after due and proper notice to all parties to this dispute. Boilermaker Helper Guy Rose did not elect to appear or reply to the carrier's submission.
"From the facts of record we find that Guy Rose entered the Railway Company's employ on September 10, 1928, as a laborer but on June 4, 1934, he became a boilermaker helper, a position not within the Firemen and Oilers' craft, and has been at all times since an employe of the Great Northern Railway Company in the capacity of a boilermaker helper in its roundhouse at Grand Forks, North Dakota, holding seniority rights as such under, and subject to terms and conditions of employment prescribed by, a collective bargaining agreement completely separate and distinct from that applicable to the Firemen and Oilers' craft, negotiated by a different organization than this Brotherhood, and conferring rights on Guy Rose only within the boilermakers' craft and not within the Firemen and Oilers' craft.
"On or about March 2, 1954, a reduction of the Railway Company's forces resulted in Guy Rose and other employes being laid off or furloughed from their positions as boilermaker helpers. Said lay-off or furlough was effected in accord with the seniority rights of such employes as boilermaker helpers, in full compliance with the agreement applicable to employes in such classification, and Guy Rose has not then or thereafter been denied the right to exercise any seniority rights held by him. Guy Rose did seek to exercise seniority as a laborer, to displace other persons employed as such and listed on the Firemen and Oilers' craft seniority roster, but was not permitted to do so for the reason that he possessed and possesses no seniority rights in the laborers' classification.
"Seniority rights of all employes arise out of contracts between the employer and the employe and/or his duly authorized representative, and exist only to the extent provided by the contract which created them. See Award 272.
"The position of the carrier in this docket must be sustained.
"Award
"Claim sustained per findings.
"National Railroad Adjustment Board
By Order of Second Division."

which were shown by the proof but which were withdrawn from the jury by the trial Judge, especially where such evidence was improperly withdrawn, as we think was true in this case." Beene v. Cook, Tenn.App., 311 S.W.2d 596, at page 602; Coca Cola Bottling Co. of Black Hills v. Hubbard, 8 Cir., 203 F.2d 859; Slocum v. New York Life Ins. Co., 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879; Central Steel Tube Co. v. Herzog, 8 Cir., 203 F.2d 544; Jaffke v. Dunham, 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed.2d 314; Langnes v. Green, 282 U.S. 531, 539, 51 S.Ct. 243, 75 L.Ed. 520; United States v. American Railway Express Co., 265 U.S. 425, 435, 44 S.Ct. 560, 68 L.Ed. 1087; Reynolds v. Hill, 8 Cir., 184 F.2d 294, 299; Olson v. United States, 8 Cir., 175 F.2d 510, 512; Commercial National Bank in Shreveport v. Parsons, 5 Cir., 144 F.2d 231, 241; see also, LeTulle v. Scofield, 308 U.S. 415, 421, 60 S.Ct. 313, 84 L.Ed. 355; Helvering v. Pfeiffer, 302 U.S. 247, 58 S.Ct. 159, 82 L.Ed. 231;

Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224; Boston & Maine R. R. v. David, 1 Cir., 167 F.2d 722.

The numerous and extended excerpts from the collective agreements [2] include provisions from which it could be inferred that a boilermaker helper like plaintiff could become possessed of a seniority right as a laborer; but, on the other hand, in the administration of the agreements the possession of such seniority had to be disclosed on the annually posted and maintained roster of laborers. If in this case the many annual rosters of laborers which omitted plaintiff's name were wrong, as plaintiff contends, then he was required to take certain clearly prescribed steps up to and including the National Railroad Adjustment Board to obtain correction of the wrong.[3] He did not do so. He introduced evidence that he made oral protests and received assurances in 1937 from a roundhouse foreman to the effect

2. The agreement of 1926 provided: "15(b) In reduction of forces, laborers who have six months' seniority and who have been advanced to helpers may return to their former seniority and shall displace the junior employee. Employees with two years or more seniority who are not eligible for promotion will not be displaced under this section."

The agreement of 1937 provided: "13 (h) Laborers promoted to position of helper or outside hostler helpers retain their laborers' rights while so employed. 14(b) In reduction of force, employees who have been advanced from Scope Two to Scope One, or to helper or outside hostler helper, may bump back to their seniority rights in their former classification but not to choice of position." Later amendment of 13(h) to provide: "(h) Laborers promoted to positions of helper, coach cleaner, or outside hostler helper retain their laborer's rights while so employed."

The agreement of 1942 provides: "4(a) Employees holding seniority under this agreement who entered the service prior to its effective date who also hold seniority as craft helpers or coach cleaners shall continue to retain such seniority under this agreement."

The agreements of 1947 and 1949 provide: "Employees holding seniority under this agreement who entered service prior

to January 1, 1942, and who also hold seniority as craft helper or coach cleaner shall continue to retain such seniority under this agreement."

3. "Agreement Between Great Northern Railway Company and System Federation 101 * * * for * * * Railway Shop Laborers", Effective January 1, 1942.

"Rule 32(a) Should any employee subject to this agreement believe he has been unjustly dealt with, or any of the provisions of this agreement have been violated, the case shall be taken to the appropriate supervising officer within ten (10) days. In such initial handling of such claim or grievance, the employee may be assisted or represented by the duly authorized Shop Committee or its representative, or by an employe representative of his own choosing. If the result still be unsatisfactory, such claim or grievance may be appealed by the representative organization or its representative to the proper higher officials in their respective order up to and including the highest officer designated by the Company to handle such matters, preferably in writing. If satisfactory adjustment is not reached by final appeal to the highest officer designated to handle such matters, the case may then be handled in accordance with the provisions of the Railway Labor Act."

that his seniority right as a laborer would be preserved to him because he would be given "two dates on the boilermaker helper's list [date of original employment and date of promotion to helper], and if we had any desire to go either up or down, we worked from both dates." Later in 1940 plaintiff said the same foreman answered a question why the names of plaintiff and others were taken off the laborers' list by saying, "You men have nothing to lose. I have given you the two dates, and we have put you on with the boilermakers helpers from the laborers' list." But there was no evidence that the foreman had any authority to bind either the railroad or the plaintiff or any of the employees who would be affected by changing the composition of the roster. The rosters showed to all of those who were concerned year after year all those persons who had seniority as a laborer and that plaintiff had no such seniority.

■ Plaintiff's claim that he had a seniority right to a laborer's job and the denial by the railroad and by the union representative of the laborers that he had such right presented a labor dispute.

In 1934 Congress amended the Railway Labor Act (45 U.S.C.A. § 151 et seq.) so as to provide a tribunal for the purpose of settling such disputes. It is known as the National Railroad Adjustment Board.

Section 153, First (i), provides:

"(i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on the date of approval of this Act, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

In Order of Railway Conductors of America v. Pitney, 326 U.S. 561, 565, 66 S.Ct. 322, 324, 90 L.Ed. 318, the court said:

" * * * But Congress has specifically provided for a tribunal to interpret contracts such as these in order finally to settle a labor dispute. Section 3 First (i) of the Railway Labor Act [45 U.S.C.A. § 153 First (i), 10 F.C.A. Title 45, Sec. 153 First (i)] provides that disputes between a carrier and its employees 'growing out of * * * the interpretation or application of agreements concerning rates of pay, rules, or working conditions * * * may be referred by either party to * * * the Adjustment Board.' The Board can not only order reinstatement of the employees, should they actually be discharged, but it can also under § 3, First (o) and (p) grant a money award subject to judicial review with an allowance for attorney's fees should the award be sustained. Not only has Congress thus designated an agency peculiarly competent to handle the basic question here involved, but as we have indicated in several recent cases in which we had occasion to discuss the history and purpose of the Railway Labor Act, it also intended to leave a minimum responsibility to the courts."

In two cases decided April 10, 1950, the Court squarely held that the jurisdiction of the Board to adjust such grievances and disputes as this case presents is exclusive. Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 580, 94 L.Ed. 795, presented the situation where certain jobs in the railroad yards were claimed for members of different unions and the holding was that the "jurisdiction of the Board to adjust grievances and disputes of the type here

involved is exclusive." Also in Order of Railway Conductors of America v. Southern Ry. Co., 339 U.S. 255, 70 S.Ct. 585, 94 L.Ed. 811, the same result was reached.

2. Furthermore the Board's assumption of jurisdiction of the dispute over plaintiff's claimed right to "bump" some laborer on the roster and to take over his work resulted in the award by the Board which the statute made exclusive.

The applicable provision of the Act concerning the effect of the Board's awards, Section 153, First (m) reads: " * * * the awards [of the Board] shall be final and binding on both parties * * *."

That this provision must be applied according to its plain meaning in such a case as is here presented clearly appears from the opinion of the Supreme Court in Brotherhood of Railroad Trainmen v. Chicago River & Indiana R. Co., 353 U.S. 30, 77 S.Ct. 635, 637, 1 L.Ed.2d 622. One of a number of disputes pending between the railroad and members of the labor union in that case was a claim for reinstatement in employment of a member who had been discharged. The railroad submitted the claims in controversy to the Adjustment Board and the Court was called on to interpret provisions of the Railway Labor Act creating that Board and to consider, i. a., the above quoted provision as to the effect of its awards.

The Court said in respect to settlement of such a dispute as is involved here that "the first step * * * is negotiation and conference between the parties. Section 3, First (i) provides that—

" 'The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions * * * shall be handled in the usual manner up to and including the chief operat-

ing officer of the carrier designated to handle such disputes * * *.'

"If the parties are unable to reach an agreement, the section continues—

" ' * * * but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the [National Railroad] Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.'

"Section 3, First (m) declares that—

" 'The awards of the several divisions of the Adjustment Board * * * shall be final and binding upon both parties to the dispute * * *.'

"This language is unequivocal. Congress has set up a tribunal to handle minor disputes which have not been resolved by the parties themselves. Awards of this Board are 'final and binding upon both parties.' And either side may submit the dispute to the Board. The Brotherhood suggests that we read the Act to mean only that an Adjustment Board has been organized and that the parties are free to make use of its procedures if they wish to; but that there is no compulsion on either side to allow the Board to settle a dispute if an alternative remedy, such as resort to economic duress, seems more desirable. Such an interpretation would render meaningless those provisions in the Act which allow *one* side to submit a dispute to the Board, whose decision shall be final and binding on *both* sides. If the Brotherhood is correct, the Adjustment Board could act only if the union and the carrier were amenable to its doing so. The language of § 3, First, reads otherwise and should be literally applied in the absence of a clear

showing of a contrary or qualified intention of Congress.

"Legislative history of the provisions creating the National Railroad Adjustment Board, reinforces the literal interpretation of the Act."

The Court was convinced that "the provisions dealing with the Adjustment Board were to be considered as compulsory arbitration in this limited field."[4]

Appellant relies on the decision of the Supreme Court in Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. But in Slocum v. Delaware L. & W. R. Co., supra, the Supreme Court pointed out facts similar to those here presented which distinguished the Moore case. It said, "Moore was discharged by the railroad." [339 U.S. 239, 70 S.Ct. 580] " * * * he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee * * *." His action for wrongful discharge did "not involve questions of future relations between the railroad and its other employees." As to a case like the present one, it said: "If a court in handling such a case must consider some provision of a collective-bargaining agreement, its interpretation would of course have no binding effect on future interpretations by the Board." Whereas in this case compliance by the railroad with plaintiff's demands might well be disastrous to labor relations with other employees and with the union behind them. Moore's discharge was in February, 1933, before the effective date of the enactment of June 21, 1934. The Supreme Court also noted in Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, loc. cit. 721, 65 S.Ct. 1282, loc. cit. 1288, 89 L.Ed. 1886, that "The Moore case involved no question concerning the validity or the legal effectiveness of an award [of the Board]. Nor did it purport to determine that the Act creates no legal obligations through an award or otherwise."

We hold that the decision in the Moore case does not require reversal of the judgment here appealed from.

The exclusive jurisdiction of the Board and the finality of its award find further support in Woolley v. Eastern Air Lines, Inc., 5 Cir., 250 F.2d 86; Ellerd v. Southern Pacific R. Co., 7 Cir., 241 F.2d 541.

■ 3. The refusal of the railroad to "bump" some employee on its roster of laborers at plaintiff's instance and put plaintiff in his place did not constitute a discharge upon which plaintiff could maintain the action for damages for discharge.

Plaintiff had been employed as a laborer until 1934 when he was promoted to boilermaker helper and his name was put on the roster in that class. It was dropped from the roster of laborers in 1937 and never appeared on that roster thereafter. When it was dropped (undoubtedly because of his promotion) the rules provided and continued to provide a complete system of grievance handling proceeding in steps from the individual's immediate superior and the local union committee on to top company and union officers and then up to the Adjustment Board. At all times no interpretation could be placed on the agreements or provisions of them unless agreed to by Management and General Committee. It was fundamental that "Seniority lists of the previous year are not subject to change. Additions to the previous year's roster are for sixty (60) days subject to correction, after which no protests will be given consideration except for typographical errors."

Plaintiff's position has been and is that an assurance given him in conversations he had on two occasions, once in 1937 and again in 1940 with a foreman in the shop, entirely exempted him from all these requirements of the collective bargaining agreement. According to his version the rosters were wrong as he knew but he

4. Cf. Pennsylvania Railroad Co. v. Day, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed. 1422, and Union Pacific Railroad Co. v. Price, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed 2d 1460, decided June 29, 1959, after this opinion was entered.

did not have to do anything to preserve his claimed right by reason of the understanding he had with the foreman even when the exercise of his claimed right would displace fellow workmen properly relying on the rosters. The collective agreements refute any possibility that the foreman had authority to act for the railroad company to grant the plaintiff any such exemption from the requirements which plaintiff must have met in order to retain for more than 15 years a seniority which each of the annual rosters showed to all concerned that he did not have. The injustice to other employees of such a course would be disastrous to labor relations.

Plaintiff made a motion after judgment in the case, relying on Rule 15(b), F.R.Civ.P., 28 U.S.C.A., for permission to amend his amended complaint by adding to the paragraph of the complaint, which is set forth at the commencement of this opinion, an allegation that "the railroad acting through its designated officials has made representations to the plaintiff which the plaintiff has relied on to his detriment."

The record does not show that the proffered amendment conforms to the proof. It is understood that it refers to statements of the foreman to the effect that removing plaintiff's name from the laborers' roster would not deprive him of his seniority as a laborer. But there was no evidence that the foreman had any authority to interpret the rules contrary to the provision that "No interpretation shall be placed on these rules unless agreed to by Management and General Committee." Objection was made and exception preserved to plaintiff's conversation with the foreman. The ruling on the motion was without error.

The point is made for the appellees that plaintiff failed to make proof that if he had been accorded the seniority rights as a laborer to which he laid claim he would have been kept at work some years and received wages and increased his retirement pay and insurance benefits. Our search of the record does not disclose the names of laborers who were working and whom he would have "bumped" and whose jobs would have yielded him the gains he sued for. But we have not rested decision on the point.

We find the judgment should be affirmed on the grounds above considered, (1) that there was a labor dispute which was for the Board, and (2) its award was conclusive, and (3) that plaintiff was in fact never discharged so as to give rise to an action for damages for wrongful discharge.

Affirmed.