[L. A. No. 28063.   In Bank.   Apr. 25, 1966.]

FRANK B. HOWE et al., Plaintiffs and Appellants, v. PACIFIC ELECTRIC RAILWAY COMPANY, Defendant and Respondent.

Kenneth Sperry and John L. Kaesman for Plaintiffs and Appellants.

H. A. Waterman, E. D. Yeomans and William R. Denton for Defendant and Respondent.

BURKE, J.—Plaintiffs are more than 300 retired former employees of defendant railway company. They appeal from the judgment of the trial court dismissing ''for want of jurisdiction'' their action for declaratory relief and to recover pension benefits to which they claim to be entitled under the private pension plan maintained by defendant prior to enactment of the Railroad Retirement Act of 1937, hereinafter sometimes called ''the Retirement Act.'' (45 U.S.C.A. §§ 228a-228z-1.) We have concluded that the trial court correctly viewed plaintiffs' claims as falling within the exclusive jurisdiction of the National Railroad Adjustment Board, and that the judgment should be affirmed.

In substance plaintiffs allege in their complaint (first amended) that (1) they were employed by defendant prior to adoption of the Retirement Act; (2) they had established rights under the private pension plan by reason of defendant's representations made in connection therewith at the time plaintiffs accepted such employment; (3) plaintiffs are entitled to receive pension benefits under the private plan (in amounts detailed in the complaint) in addition to those paid them under the Retirement Act, but defendant claims it has no obligation to pay any plaintiff any pension benefits except to the extent that benefits under the private plan would exceed those payable under the Retirement Act;[1] and (4) by reason of false and misleading statements of defendant, relied upon by plaintiffs, their action is not barred by laches or by any applicable statute of limitations.

Defendant moved for summary judgment on the ground, among others, that under provisions of the Railway Labor Act (45 U.S.C.A. § 151 et seq.)[2] the National Railroad Adjustment

---

[1] It thus appears that each plaintiff is receiving as a total retirement benefit the amount which is the greater under either the private plan or the Retirement Act as applied to his situation with respect to years of service and other pertinent factors.

[2] Section 153, First, subdivision (i), of 45 United States Code Annotated: ''The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . . shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.''

Board (the board) has exclusive jurisdiction of plaintiffs' claims. The trial court concurred in this view and dismissed the action.

In *Moore* v. *Illinois Central R.R. Co.* (1941) 312 U.S. 630, 635-636 [61 S.Ct. 754, 85 L.Ed. 1089], the United States Supreme Court held that a railroad employee who claimed that under the terms of a collective bargaining agreement he had been wrongfully discharged, could resort to a court action against his employer for damages without first seeking adjustment of his controversy by the board under the Railway Labor Act. Thereafter, in *Slocum* v. *Delaware, L. & W. R.R. Co.* (1950) 339 U.S. 239 [70 S.Ct. 577, 94 L.Ed. 795], the court found occasion to comment on *Moore*. *Slocum* held that a railroad faced with jurisdictional disputes over certain jobs between two unions, with both of which it had collective bargaining agreements, could not properly seek declaratory relief in court, as the jurisdiction of the board to interpret the agreements and "to adjust grievances and disputes of the type here involved is exclusive." Further, said the court, "Our holding here is not inconsistent with our holding in *Moore* . . . . Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. . . ." (P. 244 of 339 U.S.)

On the same day, in *Order of Railway Conductors* v. *Southern Ry. Co.* (1950) 339 U.S. 255 [70 S.Ct. 585, 94 L.Ed. 811] it was held that the board has exclusive primary jurisdiction over claims by railroad employees that under the terms of their collective bargaining agreement they were entitled to extra pay. (See also *Gainey* v. *Brotherhood of Railway & Steamship Clerks* (1960) 275 F.2d 342, 343-344.)[3]

Again in *Pennsylvania R.R. Co.* v. *Day* (1959) 360 U.S. 548 [79 S.Ct. 1322, 3 L.Ed.2d 1422], the court considered its holding in *Moore*. In the *Day* case a retired locomotive engineer sued the railroad in the federal district court for extra compensation for services allegedly rendered before retirement. He

[3]One of the declared purposes of the Railway Labor Act as expressed therein is "to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." (45 U.S.C.A. § 151a.)

claimed under a collective bargaining agreement. The opinion points out (p. 551 [360 U.S.]) that "here, as was not the case in *Order of Railway Conductors* [*Order of Railway Conductors* v. *Southern Ry. Co.* (1950) *supra*, 339 U.S. 255], the claimant has retired from railroad service. The immediate question is whether that factual difference makes a legal difference" in determining the jurisdictional issue. In holding that it did not, the court stated as follows (pp. 551-552 [360 U.S.]): "The Act grants jurisdiction to the Board of 'disputes between an employee . . . and a carrier . . . .' It defines 'employee' as including: '. . . every person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) who performs any work defined as that of an employee or subordinate official in the orders of the Interstate Commerce Commission . . . .' The National Railroad Adjustment Board was established . . . to settle disputes arising out of the relationship between carrier and employee. All the considerations which led Congress to entrust an expert administrative board with the interpretation of collective bargaining agreements are equally applicable when, as here, the employee has retired from service after initiating a claim for compensation for work performed while on active duty. The nature of the problem and the need for experience and expert knowledge remain the same. The same collective bargaining agreement must be construed with the same need for uniformity of interpretation and orderly adjustment of differences. There is nothing in the Act which requires that the employment relationship subsist throughout the entire process of administrative settlement. The purpose of the Act is fulfilled if the claim itself arises out of the employment relationship which Congress regulated. The Board itself has accepted this construction and adjudicates the claims of retired employees.[4] This uniform administrative interpretation is of great importance, reflecting, as it does, the needs and fair expectations of the railroad industry for which Congress has provided what might be termed a charter for its internal government. Moreover, the discharged employee may challenge the validity of his discharge before the Board, seeking reinstatement and back pay. See *Union Pacific R.R. Co.* v. *Price, post* [360 U.S. 601 (79 S.Ct. 1351, 3 L.Ed.2d 1460)]. Thus it is plain both from a reading of the Act in light of its purpose and the needs of its administration and from the set-

---

[4]Reference is here made to certain awards of the Board.

tled administrative interpretation that the Board has jurisdiction over respondent's claim for compensation.

"Since the Board has jurisdiction, it must have exclusive primary jurisdiction. All the considerations of legislative meaning and policy which have compelled the conclusion that an active employee must submit his claims to the Board, and may not resort to the courts in the first instance, are the same when the employee has retired and seeks compensation for work performed while he remained on active service. A contrary conclusion would create a not insubstantial class of preferred claimants.[5] Retired employees would be allowed to bypass the Board specially constituted for hearing railroad disputes whenever they deemed it advantageous to do so, whereas all other employees would be required to present their claims to the Board . . . .

"[Pp. 553-554 (360 U.S.).] Our decision in *Moore* . . . does not stand in the way of this. The decision in that case has been given its proper, limited scope in *Slocum* v. *Delaware, L. & W. R.R. Co.* [*supra*], 339 U.S. 239. *Moore* carved out from the controlling doctrine of primary jurisdiction the unusual and special situation of wrongful discharge where the aggrieved employee had been expelled from the employment relationship. Moreover, since the discharge had been accepted as final by the employee, it is probable that the damages accrued primarily after the employment relationship had terminated.

"Our consistent regard for the importance of having disputes between railroad employees and carriers settled by the administrative Board which Congress established for that purpose requires respondent to resort to the [board] for adjudication of his claim."

*Union Pacific R.R. Co.* v. *Price* (1959) *supra*, 360 U.S. 601, referred to by the court in *Day*, holds that a discharged employee who chose to challenge the validity of his discharge before the board, and lost, may not thereafter pursue a common law remedy in court for damages for the allegedly wrongful dismissal. Said the court about the *Moore* case (p. 609, fn. 8, of 360 U.S.) : "[T]he holding in *Moore* was simply that a common-law remedy for damages might be pursued by a discharged employee who did not resort to the statutory remedy before the Board to challenge the validity of his dismissal. . . ."

---

[5] Here it was commented that in the year 1956-1957 there were 361,000 retired railroad employees receiving benefits under the Railroad Retirement Act.

In *Brotherhood of Locomotive Engineers* v. *Louisville & N. R.R. Co.* (1963) 373 U.S. 33 [83 S.Ct. 1059, 10 L.Ed.2d 172], the court was again concerned with a controversy over discharge of a railroad employee and with a resultant union threat to strike. Once more it was pointed out that ''The several decisions of this Court interpreting § 3 First [of the Railway Labor Act, 45 U.S.C.A. § 153, establishing the board and its jurisdiction] have made it clear that this statutory grievance procedure is a mandatory, exclusive, and comprehensive system for resolving grievance disputes. . . .'' (P. 38.)

The claims of an employee who charges that he was laid off in violation of his alleged seniority rights have also been held to lie within the exclusive jurisdiction of the board. (*Rose* v. *Great Northern Railway Co.* (8th Cir. 1959) 268 F.2d 674, 677, 682; see also *McManaman* v. *Elgin, Joliet & Eastern Railway Co.* (1960) 25 Ill.App.2d 449 [167 N.E.2d 448]; *Roberts* v. *Western Pac. R.R. Co.* (1951) 104 Cal.App.2d 816 [232 P.2d 560].)

More recently, in *Republic Steel Corp.* v. *Maddox* (1965) 379 U.S. 650 [85 S.Ct. 614, 13 L.Ed.2d 580], the remedies available to a former employee were again considered. In *Maddox* the employee claimed severance pay under a collective bargaining agreement which was subject to section 301(a) of the Labor Management Relations Act. (29 U.S.C.A. § 185, subd. (a).) A state court judgment in his favor was reversed with the holding that under federal policy reflected in that act applicable contract grievance procedures must, unless specified as nonexclusive, be exhausted before bringing court suit. The United States Supreme Court disposed of the employee's reliance upon *Moore* (*Moore* v. *Illinois Central R.R. Co., supra,* 312 U.S. 630) by first pointing out (pp. 654-655 of 379 U.S.) that *Moore* had been distinguished in *Slocum* (*Slocum* v. *Delaware, L. & W. R.R. Co., supra,* 339 U.S. 239), and that the distinction was confirmed in *Transcontinental & Western Air, Inc.* v. *Koppal* (1953) 345 U.S. 653, 661 [73 S.Ct. 906, 97 L.Ed. 1325], as follows: ''Such [a wrongfully discharged] employee may proceed either in accordance with the administrative procedures prescribed in his employment contract or he may resort to his action at law for alleged unlawful discharge if the state courts recognize such a claim. Where the applicable law permits his recovery of damages without showing his prior exhaustion of his administrative remedies, he may so recover,

as he did in the *Moore* litigation, *supra,* under Mississippi law.''

The court, in *Maddox,* then continued (p. 655 of 379 U.S.) : ''Federal jurisdiction in both *Moore* and *Koppal* was based on diversity; federal law was not thought to apply merely by reason of the fact that the collective bargaining agreements were subject to the Railway Labor Act. Since that time the Court has made it clear that substantive federal law applies to suits on collective bargaining agreements covered by § 204 of the Railway Labor Act [45 U.S.C.A. § 184[6]] [citation], and by § 301 (a) of the LMRA. *Textile Workers Union* v. *Lincoln Mills,* 353 U.S. 448 [77 S.Ct. 912, 1 L.Ed.2d 972]. Thus a major underpinning for the continued validity of the *Moore* case in the field of the Railway Labor Act, and more importantly in the present context, for the extension of its rationale to suits under § 301 (a) of the LMRA, has been removed.'' However, said the court (fn. 14, p. 657 of 379 U.S.), ''By refusing to extend *Moore* . . . to § 301 suits, we do not mean to overrule it within the field of the Railway Labor Act. Consideration of such action should properly await a case presented under the Railway Labor Act in which the various distinctive features of the administrative remedies provided by that Act can be appraised in context, *e.g.,* the make-up of the Adjustment Board, the scope of review from monetary awards, and the ability of the Board to give the same remedies as could be obtained by court suit.''

In *Maddox* the court next explained why it declined to extend the rationale of *Moore* to LMRA suits (p. 656 of 379 U.S.) : ''We hold that any such extension is incompatible with the precepts of *Lincoln Mills* and cannot be accepted. Grievances depending on severance claims are not critically unlike other types of grievances. Although it is true that the employee asserting the claim will necessarily have accepted his discharge as final, it does not follow that the resolution of his claim can have no effect on future relations between the employer and other employees. Severance pay and other contract terms governing discharge are of obvious concern to all employees, and a potential cause of dispute so long as any employee maintains a continuing employment relationship. Only in the situation in which no employees represented by the union remain employed, as would be the case with a final

---

[6]Section 184 makes applicable to disputes between air carriers and their employees substantially the same provisions as are found in section 153, First, subdivision (i), with respect to disputes between other carriers and employees. (See fn. 2, *ante.*)

and permanent plant shutdown, is there no possibility of a work stoppage resulting from a severance-pay claim. . . ."

In the light of the views expressed in the various above cases it clearly appears that under the circumstances here presented, exclusive primary jurisdiction over plaintiffs' claims must be held to rest with the National Railroad Adjustment Board, and that *Moore* presents no barrier. Plaintiffs protest that as in *Moore* their employment relationship with defendant has been terminated, that no collective bargaining agreement is involved, that no special knowledge of railroad problems is required in determining the validity of their claims. *Moore,* however, was a single former employee of the carrier who was claiming damages based on an assertedly wrongful discharge; he had accepted as final a hostile termination of his employment relationship. As noted, in the case now before us more than 300 retired employees of defendant carrier are asserting rights which they allege grew out of and accrued to them over many years of a continuing employment relationship, and it appears that many present employees of defendant who became such prior to adoption of the Retirement Act will be in a position to assert similar rights upon retirement.

We note further certain uncontradicted allegations of the affidavit of defendant's corporate officer upon which the motion for summary judgment was based. Therein it is stated that the Railroad Retirement Act of 1937 "resulted from an agreement entered into between the railroads and the unions representing the employees," a copy of which agreement, dated February 18, 1937, is attached to the affidavit; that such agreement "was ratified by the representatives of all the plaintiffs and by" defendant prior to the effective date of the Retirement Act;[7] that upon the effective date of that Act (July 1, 1937), "all payments being made to retired employees were taken over by the Railroad Retirement Board up to $120, and all employees retiring after the effective date of the . . . Act were granted allowances in contemplation of the payments being made thereunder. This was true on [defendant] . . . and *all other railroads* subject to the Act"; that "Each of the plaintiffs in this action were represented by unions subject to

[7]Plaintiffs point out that the agreement declares that "It is understood that the conferees are not authorized *at this time* to enter into a contract or agreement binding upon their respective principals" (italics added), but do not deny that the agreement was thereafter ratified by plaintiffs' representatives, as alleged in the affidavit.

the Railway Labor Act while employed by'' defendant. (Italics added.)

The ''agreement'' referred to in the affidavit discloses a conference and agreement between ''employer conferees'' consisting ''of a committe of railroad presidents, selected by the Board of Directors of the Association of American Railroads,'' and ''employee conferees'' consisting ''of a committee, selected by the Railway Labor Executives' Association,'' upon the subject of the then pending and proposed Railroad Retirement Act of 1937, including the provisions, administration, scope, interpretation, and application of the proposed new Act under various described circumstances. It thus appears that as with respect to provisions of the Railway Labor Act which established the Adjustment Board in 1934 (see *Brotherhood of R.R. Trainmen* v. *Chicago R. & I. R.R. Co.* (1957) 353 U.S. 30, 36-39 [77 S.Ct. 635, 1 L.Ed.2d 622]; *Slocum* v. *Delaware, L. & W. R. Co.* (1950) *supra,* 339 U.S. 239, 243; *Elgin, J. & E. Ry. Co.* v. *Burley* (1944) 325 U.S. 711 [65 S.Ct. 1282, 89 L.Ed. 1886]), adoption of the Retirement Act of 1937 followed conference and understanding by representatives of both labor and railroads. In both instances labor was represented by a committee of the Railway Labor Executives' Association, which it is stated ''comprised the twenty-one standard railway labor groups, including the Brotherhood of Railroad Trainmen.'' (*Trainmen* v. *Chicago R. & I. R. Co. supra,* p. 38 of 353 U.S.)

Moreover, one of the defenses relied upon by defendant in its answer and in its motion for summary judgment is based upon its interpretation of the agreement between representatives of plaintiffs and of the railroads, including defendant. Further, it appears reasonable to anticipate that retired employees of many railroads other than defendant may consider themselves to be in a position to press retirement benefit claims against their employers similar to the claims here asserted by plaintiffs. The controversies which would be so engendered would presumably involve interpretation of the mentioned agreement, would obviously be national in scope, and it seems to us would be of the character which the National Railroad Adjustment Board, composed of representatives of railroads and of unions (45 U.S.C.A. § 153, First, subd. (a)), is especially equipped and designed to handle. thus, as intended by the Railway Labor Act, leaving ''a minimum responsibility to the courts.'' (*Order of Conductors* v. *Pitney* (1945) 326 U.S. 561, 566 [66 S.Ct. 322, 90 L.Ed

318].)[8] Decisions of such problems by the courts of the various states would engender "diversity through judicial construction," and bring about the inequality and lack of uniformity which it was the aim of the Railway Labor Act to eliminate. (See *Pennsylvania R. Co.* v. *Day* (1959) *supra,* 360 U.S. 548, 552-553.) Also it has been held that "rates of pay, rules, and working conditions" as that phrase is used in the act (see fn. 3, *ante*) includes pensions and pension plans and agreements. (*Elgin, J. & E. Ry. Co.* v. *Brotherhood of R.R. Trainmen* (1962) 302 F.2d 540, cert. den. 371 U.S. 823 [83 S.Ct. 823, 9 L.Ed.2d 63].)

It appears appropriate to again point out language from *Day, supra,* which is peculiarly persuasive here: "The purpose of the [Railway Labor] Act is fulfilled if the claim itself arises out of the employment relationship which Congress regulated. The Board itself has accepted this construction and adjudicates the claims of retired employees. This uniform administrative interpretation is of great importance, reflecting, as it does, the needs and fair expectations of the railroad industry for which Congress has provided what might be termed a charter for its internal government. . . . All the considerations of legislative meaning and policy which have compelled the conclusion that an active employee must submit his claims to the Board, and may not resort to the courts in the first instance, are the same when the employee has retired . . . ." (P. 552 of 360 U.S.)

The judgment of dismissal, based on the court's conclusion that exclusive jurisdiction of the claims of these plaintiffs lies with the board, is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Mosk, J., concurred.

Appellants' petition for a rehearing was denied May 25, 1966.

---

[8]We note instances in which the board has acted upon claims of railroad employees involving their rights and status with respect to private pension plans (maintained by the employers before enactment of the Retirement Act) viz-a-viz their rights and status under the Retirement Act, and, further, that the unions took an active part in the controversies. (See National Railroad Adjustment Board, First Division Award No. 4932, Third Division Award No. 2173.)