[Civ. No. 14673. First Dist., Div. Two. June 19, 1951.]

S. ROBERTS, Appellant, v. THE WESTERN PACIFIC RAILROAD COMPANY, Respondent.

S. Roberts, in pro. per., for Appellant.

E. L. Van Dellen for Respondent.

SCHOTTKY, J. pro tem.—Plaintiff and appellant filed an action against respondent railroad company and against two defendants who are officials of the Brotherhood of Railway and Steamship Clerks.

The first cause of action of the complaint alleged that plaintiff was hired as a clerk by respondent railroad company in 1945 and worked as such clerk until September, 1949; that he was in a craft covered by a collective bargaining agreement between the railroad and the Brotherhood of Railway and Steamship Clerks, Freight Handlers, etc.; that such collective

agreement contained provisions setting forth the rights of the railroad employees as to seniority, promotions, displacements, etc. and the procedural requirements necessary to assert and to protect these rights. The complaint set forth rule 40(a) of said agreement which reads:

"In reducing forces seniority rights shall govern. At least 48 hours advance notice will be given employees affected in reduction of forces or abolishing positions, and the Division and General Chairmen shall be furnished a copy of such notice. Employees whose positions are abolished may exercise their seniority over union employees; other employees affected may exercise their seniority rights in the same manner. Employees displaced, whose seniority rights entitle them to a regular position shall assert such rights within 10 days. Employees who do not possess sufficient seniority to displace a junior employee shall be considered as furloughed." The complaint went on to allege that on August 7, 1949, plaintiff was displaced, or "bumped" by a senior employee, and as his seniority rights were such as to entitle him to a regular position he came within the scope of the portion of said rule 40(a) which required that in order to protect his seniority rights he must assert such rights within 10 days; that not knowing of any other job in or near San Francisco he could "bump" into under the rules, he called upon the railroad company's freight agent's chief clerk and told him he thought he would have to go on furlough under rule 40(b) and was given blank forms for such purpose by said chief clerk; that he executed said forms on August 9 and mailed two of them to the company's division superintendent and two others to defendant Frank James as General Chairman of the Brotherhood; that he received no notice or indication that there was any objection to his going on furlough or that his forms were not proper; that on September 7, 1949, he was advised by letter that he had violated rule 40(a) in that he failed to assert his seniority rights to certain positions at San Francisco held by employees junior to him within the 10-day period, and that therefore he had lost his seniority and his name had been dropped from the clerks' seniority roster; that on September 13, 1949, he was informed by letter that he was not to report for further work at the company's office. The complaint further alleged that plaintiff's said discharge was contrary to said agreement and that defendants Frank James and W. L. Hatfield by and with their advice and interpretations of said agreement aided and abetted the company in their discharge

and dismissal of plaintiff and that all the defendants were actuated by animosity and malice toward plaintiff. Plaintiff then alleges that by reason of his wrongful dismissal he has been damaged by the loss of wages amounting to about $64 per week, purchase of law books and supplies amounting to $29.07.

In his second cause of action plaintiff realleged all of the foregoing and alleged further that the two individual defendants and certain officers and employees of the railroad company "actuated by ill-will, hatred, enmity and malice toward plaintiff, entered into a conspiracy to vex, annoy and harass plaintiff in order and in an effort to cause him to resign his position with the company, and in the event they were not successful, then by procuring, and causing his discharge and dismissal therefrom." The three alleged overt acts of conspiracy were that one of the individual defendants removed certain papers from appellant's desk and repeatedly complained to appellant's superior that appellant was not doing and was not capable of doing his work properly, and that in March, 1949, certain of the officers and employees of the railroad refused to allow appellant to exercise his seniority rights on a specified job.

In his third cause of action appellant realleged the foregoing and contended that under California Civil Code section 2170 and under section 3 of the Interstate Commerce Act (49 U.S.C.A. § 3) the railroad owed a duty to appellant which had been violated.

The prayer of the complaint demanded that plaintiff be restored to his former position and seniority; that he recover wages for the time lost; that he recover $29.07 special damages and $1,000 exemplary damages; and further prayed for a declaratory judgment setting forth the meaning and effect of the collective bargaining agreement as he interpreted it.

Respondent railroad company demurred to each of the three causes of action upon the ground that no cause of action was stated against respondent and also that the court had no jurisdiction of the subject matter of the action. In its memorandum opinion the trial court stated:

"The cases recently decided by the Supreme Court of the United States entitled *Slocum* v. *Delaware, Lackawanna & Western R. Co.* and *O.R.C.* v. *Southern Railway Co.*, seem to decide plainly that a state court has no jurisdiction to interpret a collective bargaining agreement or order the reinstatement of an employee. Therefore, so far as this action purports to

pray for equitable relief, it is beyond the jurisdiction of the court and the demurrer may be sustained without leave to amend.

"As to the action for damages for wrongful discharge, a state court has jurisdiction under the case of *Moore* v. *Illinois Central Railroad,* 312 U.S. 630 [61 S.Ct. 754, 85 L.Ed. 1089]. However, jurisdiction for such action for damages would lie with the municipal court because the amount of such damages is under $3,000, and therefore the action will be transferred to the Municipal Court of the City and County of San Francisco under the provisions of section 396 of the Code of Civil Procedure. . . .

"Because the court has no jurisdiction this Court will not pass on the question whether or not the complaint states a cause of action for wrongful discharge."

The court then made and entered its judgment and order reciting the ruling of the court as set forth in the memorandum opinion, and decreeing that insofar as the complaint seeks relief other than for damages for breach of plaintiff's contract of employment, defendant railroad company be granted judgment, and ordering that insofar as the complaint purported to set forth a cause of action for damages for breach of plaintiff's contract of employment, the action be transferred to the Municipal Court of San Francisco.

From this judgment and order plaintiff has appealed.

Appellant, appearing in propria persona, has filed three lengthy briefs, making numerous contentions, but in view of the fact that the issues involved upon this appeal are exceedingly simple we shall confine our discussion to those issues.

We believe that the trial court correctly determined that it had no jurisdiction to interpret a collective bargaining agreement under the Railway Labor Act or to order the reinstatement of an employee. We believe that in the recent cases of *Slocum* v. *Delaware, Lackawanna & Western R. R. Co.,* 339 U.S. 239 [70 S.Ct. 577, 94 L.Ed. 795] and *Order of Railway Conductors* v. *Southern Railway Co.,* 339 U.S. 255 [70 S.Ct. 585, 94 L.Ed. 811] the Supreme Court of the United States has settled the question of the jurisdiction of courts to interpret railroad collective bargaining agreements. These cases hold that neither a state nor a federal court has such jurisdiction but that Congress has vested exclusive jurisdiction in the National Railroad Adjustment Board. In the

Slocum case, *supra,* Mr. Justice Black said (pp. 780, 798, 799, 94 L.Ed.) :

"Section 3 of the Railway Labor Act confers jurisdiction on the National Railroad Adjustment Board to hold hearings, make findings, and enter awards in all disputes between carriers and their employees 'growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions. . . .' The question presented is whether state courts have power to adjudicate disputes involving such interpretations when the Adjustment Board has not acted. . . .

"The Act thus represents a considered effort on the part of Congress to provide effective and desirable administrative remedies for adjustment of railroad-employee disputes growing out of the interpretation of existing agreements. The Adjustment Board is well equipped to exercise its congressionally imposed functions. Its members understand railroad problems and speak the railroad jargon. Long and varied experiences have added to the board's initial qualifications. Precedents established by it, while not necessarily binding, provide opportunities for a desirable degree of uniformity in the interpretation of agreements throughout the nation's railway systems. . . .

"Our holding here is not inconsistent with our holding in *Moore* v. *Illinois Cent. R. Co.,* 312 U.S. 630, 85 L.Ed. 1089, 61 S.Ct. 754. Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, and does not involve questions of future relations between the railroad and its other employees. If a court in handling such a case must consider some provision of a collective-bargaining agreement, its interpretation would of course have no binding effect on future interpretations by the Board.

"We hold that the jurisdiction of the Board to adjust grievances and disputes of the type here involved is exclusive. The holding of the Moore case does not conflict with this decision,

and no contrary inference should be drawn from any language in the Moore opinion.''

We believe also that the trial court correctly determined that under the allegations of the complaint, as of the date of the filing thereof, the amount of damages sought was under $3,000, and that while under the case of *Moore* v. *Illinois Cent. Railroad Co., supra,* a state court would have jurisdiction in an action for wrongful discharge, the jurisdiction of this asserted cause of action was in the Municipal Court of San Francisco, and the trial court was fully justified under section 396, Code of Civil Procedure in ordering the cause transferred to that court. The trial court expressly declined to pass upon the question of whether or not the complaint states à cause of action for wrongful discharge and it is not necessary to decide that question.

In view of the foregoing the judgment and order are affirmed.

Nourse, P. J., and Goodell, J., concurred.

A petition for a rehearing was denied July 19, 1951, and appellant's petition for a hearing by the Supreme Court was denied August 16, 1951.