[Civ. No. 20669. First Dist., Div. One. Dec. 6, 1963.]

WAYNE E. WISE, Plaintiff and Appellant, v. SOUTHERN PACIFIC COMPANY et al., Defendants and Respondents.

Perkins, Carr & Anderson, Thomas C. Perkins and Francis Newell Carr for Plaintiff and Appellant.

W. A. Gregory, William R. Denton and Ronald K. Millar for Defendants and Respondents.

SULLIVAN, J.—Plaintiff appeals from a judgment of dismissal entered after the sustaining without leave to amend of a demurrer to his second amended complaint.

Said complaint is in two counts: the first against defendant Southern Pacific Company[1] alone for damages for the wrongful discharge of plaintiff from its employ; and the second against all defendants for damages resulting from a conspiracy to obtain such wrongful discharge.[2]

The first count alleges in substance as follows: That plaintiff a member of the Brotherhood of Railroad Carmen, hereafter referred to as the Brotherhood, was employed by defendant Company as a railroad carman; that during all times mentioned in said complaint there was in full force and effect between the Brotherhood and defendant Company a written collective bargaining agreement covering the terms of em-

---

[1]Hereafter referred to as Company.

[2]Remaining defendants are: Association of American Railroads, hereafter referred to as Association; Harry J. Hitke, and certain defendants designated by fictitious names, all allegedly employees, agents and representatives of defendant Company; W. A. Smith and certain other defendants designated by fictitious names, all allegedly employees, agents, and representatives of defendant Association.

ployment between plaintiff and said defendant, a copy of such agreement being attached to the complaint and incorporated by reference; that pursuant to certain rules and related sections of said agreement, plaintiff was not to be discharged by said defendant except for just cause and without first having a fair hearing by a proper officer of said defendant; that pursuant to specified rules of said agreement, plaintiff, at a reasonable time prior to any such hearing, was to be apprised in writing of the precise charge against him, be given a reasonable opportunity to secure witnesses and have the right to be represented; and that plaintiff being at all times a committeeman of the Brotherhood and delegated to represent the employees covered by the agreement, defendant, pursuant to a specified rule thereof, agreed not to discriminate against any such union official.

The second amended complaint further alleges that on January 21, 1960, plaintiff by written notice from defendant was accused by said defendant of acts of disloyalty to defendant and violation of Rule 803 of the General Rules and Regulations of defendant;[3] that thereafter hearings were held on said charge at which various persons appeared and gave testimony and various written statements of other persons were received in evidence; that at the conclusion of said hearings, "said hearing officer did wrongfully find that plaintiff had violated said Rule 803" and defendant Company did thereupon discharge plaintiff; that plaintiff exhausted all his administrative remedies by appealing his discharge to the highest officer designated to hear appeals; and that such officer thereafter and on May 24, 1960, denied plaintiff's appeal for reinstatement and affirmed his discharge.

It is also alleged that plaintiff complied with all the terms and conditions of his employment, that he did not violate

---

[3]Said written notice attached to said complaint and incorporated therein by reference, notified plaintiff to be present on January 26, 1960, "for formal hearing in connection with your having allegedly solicited various employees of the Southern Pacific Company, during the years 1957 and .1958, for the purpose and with the intent of inducing these employees to bring personal injury lawsuits against this Company and to hire certain attorneys-at-law to handle and prosecute their said personal injury claims and lawsuits against this Company...." The notice further stated that: "[I]n this respect you are charged with responsibility which may involve disloyalty to this Company and violation of Rule 803 of the General Rules and Regulations of the Southern Pacific Company, that part reading: 'Any act of hostility, or wilful disregard of the Company's interests will not be condoned.'"

Rule 803 and that he was not guilty of disloyalty to said Company.

The second amended complaint further alleges: That plaintiff's discharge was wrongful and in violation of said agreement in that defendant and its agents and officers did discriminate against plaintiff contrary to the provisions of rule 41 of said agreement and did deny plaintiff a fair hearing in that the hearing officer failed to consider the evidence presented in arriving at his decision; that the hearing officer failed to permit plaintiff to cross-examine witnesses presented against him and to be confronted by his accusers; that said hearing officer conducted the examination of witnesses in an unfair manner and failed to permit plaintiff to have reasonable continuances to produce evidence on his own behalf; that said hearing officer and other officers of said defendant hearing the appeals knowingly and intentionally received written and oral testimony known by them to be false and untrue and to have been wrongfully induced for the sole purpose of securing plaintiff's discharge.

The first count concludes with allegations that plaintiff has suffered loss of earnings and of certain hospital, medical and pension rights and that by reason of his discharge has suffered damages in the sum of $100,000.

The second count of the second amended complaint against all defendants including defendant Company (see footnote 2, *ante*) incorporates by reference all allegations of the first count except those relating to the exhaustion of administrative remedies and except the demand for $100,000 compensatory damages.[4] It then alleges in words and in substance as follows: On information and belief that prior to January 21, 1960 (date of written notice of accusation) defendant Company "did conspire and agree with its co-defendants herein to bring false charges against plaintiff by wrongfully accusing plaintiff of disloyalty and violation of Rule 803 of the General Rules and Regulations of the Southern Pacific Company; and did agree and conspire to deprive plaintiff of a fair hearing on said charges, all for the purpose of securing the discharge of plaintiff from his employment, as aforsesaid, in violation and breach of the aforesaid collec-

---

[4]Plaintiff however has incorporated all other allegations of the first count relating to special damages resulting from loss of wages and loss of hospital, medical and pension rights. Plaintiff prays leave to prove the former item of special damage at trial and to amend the complaint to show the latter item when ascertained.

tive bargaining agreement''; that pursuant to said unlawful agreement defendants Association, Smith and other employees of defendant Association induced certain persons to give false statements and to appear at the hearing and give false testimony about plaintiff; that pursuant to said unlawful agreement defendant Company by the above-mentioned written notice made certain false charges against plaintiff; that said defendant Company "aided and abetted by its co-defendants" knowingly and intentionally received false statements and testimony at the hearing (as alleged in the first count), deprived plaintiff of a fair hearing and wrongfully discharged him.

It is alleged that the performance of defendants' acts "was motivated by malice and was intentional" and was for the purpose and objective of discriminating against plaintiff as a committeeman of the Brotherhood and obtaining his discharge; and that plaintiff is entitled to and claims punitive damages against defendants in the sum of $50,000.

Defendants' demurrers assert that each count of the complaint fails to state facts sufficient to constitute a cause of action and is uncertain, ambiguous and unintelligible in various particulars. The court sustained the general and special demurrers of each defendant without leave to amend.

*First count against defendant Southern Pacific Company.*

It is settled that a railroad employee may bring and maintain a common law or, where a state so provides, statutory action for damages for his wrongful discharge from employment in breach of a collective bargaining agreement. A state court has jurisdiction to adjudicate such cases and is not barred from doing so by the Railway Labor Act. (45 U.S.C.A. § 151 et. seq.) However neither state nor federal courts have jurisdiction to interpret a collective bargaining agreement or to order reinstatement of an employee, exclusive jurisdiction over such matters being vested in the National Railroad Adjustment Board. (*Moore* v. *Illinois Central R.R. Co.* (1941) 312 U.S. 630 [61 S.Ct. 754, 85 L.Ed. 1089]; *Slocum* v. *Delaware, Lackawanna & Western R.R. Co.* (1950) 339 U.S. 239 [70 S.Ct. 577, 94 L.Ed. 795]; *Roberts* v. *Western Pacific R.R. Co.* (1951) 104 Cal.App.2d 814, 815 [232 P.2d 563]; *Roberts* v. *Western Pacific R.R. Co.* (1951) 104 Cal.App.2d 816, 819-820 [232 P.2d 560], cert. denied 342 U.S. 906 [72 S.Ct. 298, 96 L.Ed. 678]; *Stroman* v. *Atchison, T. & S.F. Ry. Co.* (1958) 161 Cal.App.2d 151, 165 [326 P.2d 155]; *Russell* v. *Ogden Union Ry. & Depot Co.* (1952) 122

Utah 107 [247 P.2d 257, 260].) Defendant Company does not challenge these principles establishing the jurisdiction of the court below.

It is also settled that "California law requires an employee to exhaust his administrative remedies under his employment contract before he may bring an action for damages for violation of such contract. [Citations.]" (*Stroman* v. *Atchison, T. & S.F. Ry. Co., supra,* 161 Cal.App.2d 151, 166.) Such requirement has been met in this case.

The general rules of pleading applicable to actions for breach of contract obtain in actions for breach of contracts of employment. (*Palmer* v. *Harlow* (1921) 52 Cal.App. 758, 763 [199 P. 844].) The essential elements required to be pleaded therefore in an action for breach of employment contract are: (1) the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damage to plaintiff. (*Smith* v. *Royal Mfg. Co.* (1960) 185 Cal.App.2d 315, 325 [8 Cal.Rptr. 417]; *M. G. Chamberlain & Co.* v. *Simpson* (1959) 173 Cal. App.2d 263, 274 [343 P.2d 438]; 2 Witkin, Cal. Procedure, p. 1226.) A complaint in such an action will be held sufficient as against a general demurrer "if on consideration of all the facts stated it appears the plaintiff is entitled to any relief at the hands of the court against the defendants ... although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, ... In passing upon the sufficiency of a pleading, its allegations must be liberally construed with a view to substantial justice between the parties." (*Gressley* v. *Williams* (1961) 193 Cal.App.2d 636, 639 [14 Cal.Rptr. 496]; *Hardy* v. *San Fernando Valley Chamber of Commerce* (1950) 99 Cal.App.2d 572, 577-578 [222 P.2d 314].)

It is obvious that in the case at bench the first two elements of the cause of action are adequately pleaded. As to the contract, where a written instrument is the foundation of a cause of action, it may be pleaded *in haec verba* by attaching a copy as an exhibit and incorporating it by proper reference. (*Holly Sugar Corp.* v. *Johnson* (1941) 18 Cal.2d 218, 225 [115 P.2d 8]; *Byrne* v. *Harvey* (1962) 211 Cal.App.2d 92, 103 [27 Cal.Rptr. 110].) As to performance, plaintiff may allege that he has "duly performed all the conditions on his part." (Code Civ. Proc., § 457.) Defendant Company does not attack plaintiff's averments relating to the fourth element of damages.

Our examination of the first count thus narrows to the pleading of defendant Company's breach. On this point we do not face the problem of a bare allegation without more, that said defendant "breached" or "violated" its contract, an allegation which would clearly be conclusionary and insufficient. (See *Bentley* v. *Mountain* (1942) 51 Cal.App.2d 95, 98 [124 P.2d 91].)[5] Equally conclusionary and defective are allegations that an act was "wrongful," "illegal," "without authority," "unlawful," "unjust," "arbitrary" or "fraudulent" which *without additional allegations* raise no triable issue. (See for example the following cases cited by defendant Company: *Going* v. *Dinwiddie* (1890) 86 Cal. 633, 638 [25 P. 129]; *Metzenbaum* v. *Metzenbaum* (1948) 86 Cal. App.2d 750, 753 [195 P.2d 492]; *Green* v. *Grimes-Stassforth Stationery Co.* (1940) 39 Cal.App.2d 52, 57 [102 P.2d 452]; *Meyer* v. *Board of Public Works* (1942) 51 Cal.App.2d 456, 470 [125 P.2d 50]; see also 2 Witkin, Cal. Procedure, pp. 1143-1144.) Nor do we face the problem of a general allegation, without more, that the defendant "has failed and refused to perform" its contract on the sufficiency of which there is a division of authority in the California cases. (See *Fisher* v. *Pearson* (1874) 48 Cal. 472, 478 holding such an allegation "radically defective and insufficient to support the judgment"; and *Nohl* v. *County of Del Norte* (1919) 45 Cal.App. 306, 310 [187 P. 761], holding such an allegation sufficient as against a general demurrer; 2 Witkin, Cal. Procedure, pp. 1236-1237; 2 Chadbourn, Grossman, Van Alstyne, Cal. Pleading, pp. 181-185.) Plaintiff does not rest his charges on such naked averments. Admittedly if plaintiff did no more than characterize defendant's acts by the terms "wrongful," "unjust" and "without cause" the general demurrer would be well taken. However, we are satisfied that there is considerably more pleaded and that the first count complies with the rule formulated by the last cited authority that "sufficient facts should be alleged to apprise the defendant of the specific conduct which the plaintiff assigns as violative of the contract." (2 Chadbourn, Grossman, Van Alstyne, *op. cit.*, p. 182.)[6]

---

[5]This would be the case if plaintiff was content with his allegation "[t]hat said discharge was unjust and without cause and in violation of the terms of said agreement. . . ."

[6]This authority further states that "[a]lthough . . . a general allegation of failure or refusal to perform a contract is of dubious sufficiency, at least as against special demurrer, plaintiff may properly allege the

In the instant case plaintiff alleged that under the terms of the Brotherhood-Company agreement he could not be dismissed without just cause or without first having a fair hearing[7] and as a union committeeman could not be discriminated against.[8] He then alleged six instances of specific conduct on the part of the Company as violative of these covenants of the agreement: (1 )failure of the hearing officer to consider the evidence presented; (2) failure of the hearing officer to permit plaintiff to cross-examine witnesses presented against him; (3) failure of the hearing officer to permit plaintiff to be confronted by his accusers; (4) the hearing officer's conduct of examination of witnesses in an unfair manner; (5) failure of hearing officer to grant plaintiff reasonable continuances to obtain and produce evidence; (6) the intentional reception by the various hearing officers of testimony known by them to be false and induced for the purpose of securing plaintiff's discharge. We are satisfied that the foregoing allegations apprise defendant of the specific charges it has to meet.

Defendant argues that the complaint is insufficient because it does not further allege details: as to the identity of the aforesaid accusers and of the witnesses not cross-examined; as to whether plaintiff attempted or requested

breach as consisting of a failure to do the specific thing in question. . . . On the other hand, where the breach consists of affirmative conduct in violation of an agreement, express or implied, to refrain therefrom, the complaint should specifically allege what the defendant did.'' (2 Chadbourn, Grossman, Van Alstyne, *op. cit.*, p. 183.)

[7]Rule 39 of the collective bargaining agreement provides as follows: "No employe shall be disciplined or dismissed without a fair hearing by the proper officer of the Company. Suspension in proper cases pending a hearing which shall be prompt, shall not be deemed a violation of this rule. At a reasonable time prior to the hearing, such employe shall in writing, be apprised of the precise charge against him, be given reasonable opportunity to secure the presence of necessary witnesses, and shall have the right to be represented as provided for in Rule 38. If it is found that an employe has been unjustly suspended or dismissed from the service, such employe shall be reinstated wiith his seniority rights unimpaired, and compensated for the wage loss, if any, resulting from said suspension or dismissal. Stenographic report of hearing will be taken if requested and employe's representative will be furnished with a copy.''

[8]Rule 41 of said agreement provides: "The Company will not discriminate against any Committeeman who is delegated to represent employes covered by this Agreement, and for that purpose will grant leave of absence and free transportation, when not contrary to State or National laws or pass regulations.''

cross-examination; as to the evidence not considered and whether it was material; as to how the examination was conducted in an unfair manner; as to the continuances; as to what testimony was false and untrue, its materiality, and who knew it to be so. All of these are evidentiary facts. ▮ It is unnecessary to allege evidentiary facts. (*Taylor* v. *Oakland Scavenger Co.* (1938) 12 Cal.2d 310, 317 [83 P.2d 948]; see 39 Cal.Jur.2d, Pleading, § 21, pp. 32-35.)

Defendant has also cited several cases noted by us above in support of its argument that certain allegations are conclusionary[9] and that the first count is therefore insufficient as a matter of law. They are clearly distinguishable and need not be discussed in detail since in none of them were there, as here, additional allegations setting forth the specific conduct of defendant constituting the breach of the agreement involved.

▮ Defendant also claims that although plaintiff alleged that he did not violate rule 803 (see footnote 3, *ante*) and that he was not guilty of disloyalty to defendant, plaintiff did not deny in such pleading that he had solicited various employees to bring personal injury actions against said defendant as charged in defendant's written accusation of January 21, 1960. It is to be noted that in addition to his above denials, plaintiff alleged that he had complied with all the terms and conditions of the collective bargaining agreement and had performed all the duties and obligations imposed on him by his employment with defendant. As we have pointed out, plaintiff properly pleaded performance of all conditions on his part. (Code Civ. Proc., § 457.) We think these allegations put in issue his innocence of the charges in question and that plaintiff's above denials were embracive of the more particularized statement that he had solicited litigation against defendant.

▮ Defendant Company's special demurrer asserts that the first count is uncertain, ambiguous and unintelligible. Specifically it claims that the first count fails to set forth in what manner and respect plaintiff's discharge was in violation of his rights under the agreement; that it is not alleged "in ultimate facts" plaintiff was not guilty of disloyalty, was denied a fair hearing and was wrongfully dis-

---

[9]They are: that plaintiff's discharge was "wrongful and in violation" of the agreement; that defendant Company "did discriminate"; that plaintiff's discharge was "unjust and without cause" and "in violation of" the agreement.

charged. "All that is required of a plaintiff, even as against a special demurrer, is that he set forth in his complaint the essential facts of his case with reasonable precision and with particularity sufficiently specific to acquaint the defendant of the nature, source, and extent of his cause of action." (*Goldstein* v. *Healy* (1921) 187 Cal. 206, 210 [201 P. 462]; *Smith* v. *Kern County Land Co.* (1959) 51 Cal.2d 205, 209 [331 P.2d 645].) Essentially the problem is one of fairness in pleading so as to give the defendant such notice by the complaint that he may prepare his case. (*Bauer* v. *County of Ventura* (1955) 45 Cal.2d 276, 291 [289 P.2d 1].) Nor is it necessary for the plaintiff to particularize matters presumptively within the knowledge of the defendant. (*Smith* v. *Kern County Land Co., supra*; *Dumm* v. *Pacific Valves* (1956) 146 Cal.App.2d 792, 799 [304 P.2d 738]; *Strozier* v. *Williams* (1960) 187 Cal.App.2d 528, 532 [9 Cal.Rptr. 683].) For the reasons already set forth by us we are satisfied that the matters referred to in the special demurrer are set forth with sufficient clarity and particularity.

We hold that the general and special demurrer to the first count should have been overruled.[10]

*Second count against all defendants.*[11]

All defendants contend that the second count for conspiracy to breach the collective bargaining agreement is insufficient as a matter of law because it fails to state facts sufficient to constitute a cause of action against them or any of them. They rest their position on the following arguments: (1) An action will not lie in favor of one party to a contract (plaintiff here) against another party thereto (defendant Company) for conspiring to breach the contract; (2) agents and employees of corporations (defendants Company and Association here) cannot conspire with their respective principals; (3) no causal connection is alleged between the conspiracy and plaintiff's discharge; (4) by failing to reallege the pertinent paragraph of the first count (VIII) relating to

[10]In the foregoing discussion we have ignored the fact that in the trial court Hitke as well as the Company demurred to the first count since it is quite clear that defendant Company is the only defendant named therein.

[11]See footnote 2, *ante*. Defendants Company and Hitke on the one hand and Association and Smith on the other have filed separate briefs. Since their arguments are substantially the same we do not consider them separately.

the exhaustion of plaintiff's contractual remedies, plaintiff has failed to state a cause of action; and (5) the allegations of the second are conclusions which raise no triable issue. We proceed to consider these arguments in the above order.

### 1. *Civil Conspiracy.*

The gist of an action charging civil conspiracy is not the conspiracy but the damages suffered. (*Bowman* v. *Wohlke* (1913) 166 Cal. 121, 125 [135 P. 37, Ann.Cas. 1915B 1011]; *Brumfield* v. *Crocker-Anglo National Bank* (1960) 185 Cal.App.2d 759, 764 [8 Cal.Rptr. 591]; Prosser (2d ed.), Law of Torts, p. 235.) It is the long established rule that a conspiracy, in and of itself, however atrocious, does not give rise to a cause of action unless a civil wrong has been committed resulting in damage. (*Herron* v. *Hughes* (1864) 25 Cal. 555, 560; *Mox Incorporated* v. *Woods* (1927) 202 Cal. 675, 677 [262 P. 302]; *Orloff* v. *Metropolitan Trust Co.* (1941) 17 Cal.2d 484, 488 [110 P.2d 396]; *Agnew* v. *Parks* (1959) 172 Cal.App.2d 756, 762 [343 P.2d 118]; *Burke* v. *Hibernia Bank* (1960) 186 Cal.App.2d 739, 747-748 [9 Cal. Rptr. 890].) As stated in *Mox, supra,* "the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tort-feasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity." (Pp. 677-678.) (See also *California Auto Court Assn.* v. *Cohn* (1950) 98 Cal.App.2d 145, 149 [219 P.2d 511]; *Schaefer* v. *Berinstein* (1956) 140 Cal. App.2d 278, 293 [295 P.2d 113]; Prosser, *op. cit.,* pp. 234-236.) The advantage to the pleader in charging a conspiracy is to implicate all participating in the common design and thus fasten liability on him who agreed to the plan to commit the wrong as well as on him who actually carried it out. (*Mox Incorporated* v. *Woods, supra,* 202 Cal. 675, 678; *Agnew* v. *Parks, supra;* *Schaefer* v. *Berinstein, supra.*) The conspiracy "may be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances." (*Schaefer* v. *Berinstein, supra;* *James* v. *Herbert* (1957) 149 Cal.App.2d 741, 746-747 [309 P.2d 91].)

To state a cause of action for conspiracy, the complaint must allege (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts. (*Mox Incorporated* v. *Woods, supra;* *Orloff* v. *Metropolitan*

*Trust Co., supra; California Auto Court Assn.* v. *Cohn, supra; Schaefer* v. *Berinstein, supra; James* v. *Herbert, supra.*)

A tort action "will lie for the intentional interference by a third person with a contractual relationship either by unlawful means or by means otherwise lawful when there is a lack of sufficient justification. [Citations.]" (*Herron* v. *State Farm Mutual Ins. Co.* (1961) 56 Cal.2d 202, 205 [14 Cal.Rptr. 294, 363 P.2d 310].) A tort action will also lie against third persons who pursuant to a conspiracy have wrongfully induced or procured the breach of a contract resulting in damages. (*California Auto Court Assn.* v. *Cohn, supra,* 98 Cal.App.2d 145; *James* v. *Herbert, supra,* 149 Cal.App.2d 741; 15 C.J.S., Conspiracy, § 13, p. 1020; 11 Am.Jur., Conspiracy, § 50, p. 582; 84 A.L.R. 98; 26 A.L.R.2d 1284.)[12] As already pointed out, the nucleus of the action is not the conspiracy but the civil wrong producing damage to the plaintiff.

The crucial question which we face in the case at bench is whether such an action for conspiracy[13] will lie against a party to the contract in question (here defendant Company) as one of the defendant conspirators. Plaintiff asserts that it does on the reasoning that if a cause of action exists for intentional interference with contract rights or for inducing a breach of contract, a cause of action exists for a conspiracy to commit such acts. In support of this position plaintiff relies on *California Auto, James* and *Moropoulos* v. *C.H. & O.B. Fuller Co.* (1921) 186 Cal. 679 [200 P. 601]. Defendants assert that the action does not lie on the reasoning that a party to a contract cannot conspire to breach or induce the breach of his own contract. Defendants Company and Hitke rely on *May* v. *Sante Fe Trail Transp. Co.* (1962) 189 Kan. 419 [370 P.2d 390]; and *Canister Co.* v. *National Can Corp.* (D.C. Del. 1951) 96 F.Supp. 273.

Nevertheless we have found no California case squarely deciding whether or not an action for conspiracy to breach a contract will lie against a party thereto. In *California Auto,*

---

[12]While *Herron, supra,* was brought against the defendant insurance company and its agent, the action was not framed on the theory of conspiracy.

[13]Our use, for convenience, of the abbreviated expression "action for conspiracy" must be understood to include the other necessary elements thereof, namely wrongful acts done pursuant to the conspiracy and damages resulting therefrom. (See authorities, *ante.*)

*supra*, the action was for damages arising out of a conspiracy of the defendants to deprive plaintiff of a real estate commission in the sale of a motel. Defendant Cohn employed plaintiff by written agreement. Plaintiff introduced defendant Marks, the prospective purchaser, to Cohn. Subsequently as it was alleged, defendants Mr. and Mrs. Cohn, defendants Mr. and Mrs. Marks and defendants Mr. and Mrs. Ostroff (the father-in-law and mother-in-law of Marks) conspired to and did negotiate the sale without plaintiff, title being taken in the names of the defendants Ostroff although Marks became the actual owner. Defendants Ostroff and Marks demurred and such demurrer was sustained without leave to amend, the action against defendants Cohn (the owners and contracting parties) remaining pending in the trial court. Reversing the judgment entered on the demurrer, the court said : ''In the various California cases wherein damages have been awarded or injunctive relief granted for unjustifiable interference with contractual relations, *it is apparent that the plaintiff is not confined to an action ex contractu against the party with whom he contracted.*'' (98 Cal.App.2d at p. 150; italics added.) Although the court held that the complaint stated a cause of action for conspiracy and it is arguable that this included the defendants Cohn as well as the demurring defendants, it must be recognized that no issue was raised as to the cause of action as against the Cohns and that the opinion fails to make clear that they also were liable on the conspiracy charge.

In *James, supra,* the plaintiff entered into an oral agreement of joint venture with the defendants Herbert and Prescott. Plaintiff alleged that said defendants entered into a wrongful conspiracy with each other and with the defendant Roberts to exclude her from further participation in the venture and to deprive her of her interests and profits; and that pursuant to the conspiracy, defendants did so, converted to their use all the assets and destroyed the business of the venture. The demurrer of Prescott (one of the joint venturers) and Roberts (the third person) were sustained with leave to amend and, upon plaintiff declining to amend, judgment was entered on the order sustaining the demurrer. The appellate court held that the complaint stated facts sufficient to constitute a cause of action for conspiracy and reversed the judgment. It is to be noted that in *James,* as distinguished from *California Auto,* the legal issue on demurrer was raised by one of the contracting parties to the venture (Pres-

cott) and that the court expressly passed upon the sufficiency of a complaint for conspiracy as to him. The opinion makes no differentiation between defendant conspirators who are parties to the agreement involved and those who are not. In view of this silence on the part of the court, any fair evaluation of *James* must consider the possibility that the appellate court felt that the gravamen of the action was a conspiracy to commit the tort of conversion rather than to breach the oral joint venture contract, which was only incidentally involved.

In *Moropoulos, supra,* plaintiff sued to recover damages arising from a conspiracy between the defendants and one Karales (plaintiff's partner) pursuant to which such persons wrongfully and fraudulently appropriated and destroyed the partnership business. However Karales was not joined as a defendant and while the court noted that he "was a joint tort-feasor with the defendants" (186 Cal. 679, 687) the case appears to involve a conspiracy to commit the tort of conversion and not to induce breach of contract. It is clear that it cannot serve as authority for the proposition that an action for conspiracy to breach a contract lies against a party to the contract.

In sum, while we have found no California case precisely in point, we believe that *California Auto* and *James,* the latter particularly, recognize to some extent that a cause of action for conspiracy to breach a contract may lie against a contracting party.

We turn to the defendants' authorities. *May* v. *Santa Fe Trail Transp. Co., supra,* cited by Company and Hitke, was an action against a corporation and three of its officials: in the first count for unlawful discharge of plaintiff from employment; and in the second count for a conspiracy to cause such discharge. Plaintiff alleged an oral contract terminable at will and conceded that unless a cause of action was stated in the first count, none was stated in the second. Since the contract was terminable at will, plaintiff's discharge was not actionable and, absent a wrongful act, no action could lie against defendant employer for "conspiring" to do something it could lawfully do. *May* therefore does not hold that an action for conspiracy will not lie under any circumstances against such contracting party. Indeed *May* but echoes the broad principle applied in certain California cases cited by defendants Association and Smith, that a conspiracy is not actionable unless it results in the perpetration of an unlawful

act or some injurious act by unlawful means.[14] None of the foregoing cases are determinative of the instant problem.

*Canister Co.* v. *National Can Corp., supra,* 96 F. Supp. 273, applied the New York law and while not a conspiracy case itself held that under such law "an action for inducing a breach of contract will lie against a third party but a party to the contract itself can not be held responsible for inducing himself to commit a breach of that contract or for conspiring to breach it." (P. 274.) The rationale of the New York cases was that otherwise the result would be in effect to allow the recovery of punitive damages in a contract action in violation of a New York statute. Defendants argue that since California law similarly provides for exemplary damages in actions "not arising from contract" (Civ. Code, § 3294) and allows only compensatory damages "[f]or the breach of an obligation arising from contract" (Civ. Code, § 3300), plaintiff cannot circumvent the proper measure of damages by asserting a conspiracy against defendant Company to breach its own contract. Defendants seek to buttress this argument with a citation to *Crogan* v. *Metz* (1956) 47 Cal.2d 398, 405 [303 P.2d 1029], which declares that punitive damages "may not be granted in an action based on a breach of contract even though the defendant's breach was wilful or fraudulent. [Citations.]" However *Crogan* did not involve conspiracy or the question now confronting us.

Thus defendants furnish us only with *Canister*. Plaintiff seems content to rest his argument on a citation of the foregoing California cases and an attempt to distinguish *May* and *Canister*.

Our own independent research discloses that on the crucial question at hand there is a division of authority in other jurisdictions. This division is pointed out and summarized in *Worrie* v. *Boze* (1956) 198 Va. 533 [95 S.E.2d 192, 63 A.L.R. 2d 1315]. In *Worrie*, plaintiffs (and on appeal defendants in error) Boze brought an action against former employees Worrie and Baily for conspiring to breach a contract of employment entered into between plaintiffs and Worrie.[15] Affirming a judgment against both defendants awarding

---

[14]Defendants Association and Smith cite *Harris* v. *Hirschfeld* (1936) 13 Cal.App.2d 204 [56 P.2d 1252]; *Sweeley* v. *Gordon* (1941) 47 Cal. App.2d 381 [118 P.2d 14]; and *Bentley* v. *Mountain, supra,* 51 Cal.App. 2d 95.

[15]Apparently Baily also had entered into a similar contract but could not be held thereon because of his plea of infancy.

plaintiffs compensatory and punitive damages the court stated that while in an earlier action plaintiffs might have asserted against Worrie a claim for damages for breach of contract, in the case before it, there was a separate cause of action against Worrie for conspiring with Baily to breach the contract. "The cause of action against Worrie for the breach of his contract involved the acts and conduct of Worrie alone. No conspiracy with Baily, or anyone else, was necessary to maintain that action. Mere proof of the breach by Worrie was sufficient. On the other hand, the cause of action against Worrie in the present suit is based upon his alleged tort in conspiring with Baily to breach the Worrie contract. Here the plaintiffs were required to prove something more than the mere breach by Worrie." (P. 197 [95 S.E.2d].)

In rejecting the contention that an action would not lie against Worrie for conspiring to breach his own contract, the court called attention to the following cases supporting such position: *Canister Co.* v. *National Can Corp., supra,* 96 F. Supp. 273; *Sax* v. *Sommers* (1951) 108 N.Y.S.2d 467; *Allison* v. *American Airlines* (D.C. N.D. Okla. 1953) 112 F. Supp. 37; *Barber* v. *Stephenson* (1953) 260 Ala. 151 [69 So.2d 251]; and *Hein* v. *Chrysler Corp.* (1954) 45 Wn.2d 586 [277 P.2d 708]. It is also convenient to note at this point that *Canister,* which is included among the foregoing and is relied on by defendants in the case before us, is one of a line of New York cases holding that such a conspiracy is not actionable. (See 15 C.J.S. Conspiracy, § 13, p. 1020, 1963 Cum. Supp. and cases therein cited.)

The court in *Worrie* also lists the following cases as among those holding that an action for conspiracy will lie against a party to the contract: *Motley, Green & Co.* v. *Detroit Steel & Spring Co.* (C.C. S.D. N.Y. 1908) 161 F. 389; *Hendricks* v. *Forshey* (1917) 81 W.Va. 263 [94 S.E. 747, L.R.A. 1917C 150]; *Luke* v. *Du Pree* (1924) 158 Ga. 590 [124 S.E. 13]; *Sorenson* v. *Chevrolet Motor Co.* (1927) 171 Minn. 260 [214 N.W. 754, 84 A.L.R. 35]; *Wade* v. *Culp* (1939) 107 Ind. App. 503 [23 N.E.2d 615]; *Falstaff Brewing Corp.* v. *Iowa Fruit & Produce Co.* (8th Cir. 1940) 112 F.2d 101; and *Charles* v. *Texas* Co. (1942) 199 S.C. 156 [18 S.E.2d 719].

In *Motley, Green & Co.* v. *Detroit Steel & Spring Co., supra,* a complaint against two corporations alleging that they entered into a conspiracy to and did procure the breach of a contract between plaintiff and one of said defendants was held to state a good cause of action against both defend-

ants. The court stated: "If it be an actionable wrong for a third person to interfere in a contract and induce one of the parties thereto to break it to the injury of the other, can it be said it is not equally a wrong for one of the parties to the contract to invite a third party to unite with him and aid him in breaking the contract in such a way as possibly to escape liability in an action for nonperformance and, gaining his consent, to act together in consummating their agreement? There are many refinements in the law, necessarily so, but courts should be as astute in applying well-known principles of justice to remedy wrongs as the wrongdoers are in devising schemes to perpetrate them.

"The acts of the Railway Steel Spring Company clearly constituted an actionable wrong, as damage resulted to the complainant company. The acts were done without justifiable cause. It is immaterial that it was invited to commit these wrongs by the other party to the contract. . . . If what the Railway Steel Spring Company [third person] did was an actionable wrong, how can it be said that the same acts, done and aided by the Detroit Company [contracting party], did not constitute an actionable wrong on its part? As the two defendant companies acted in concert, and took part in the several acts constituting the wrong and in consummating it, to my mind both are liable on precisely the same grounds. When two parties unite and act in concert by agreement to commit a wrong, and it is consummated, the injured party may sue one alone, or both in one action, or each in a separate action." (161 F. at p. 397.)

In *Hendricks* v. *Forshey, supra,* the complaint alleged that plaintiff had similar individual contracts with defendants and others to haul milk and that the defendants conspired to breach their respective contracts and to refuse to permit plaintiff to perform them. The court held that it stated a a good cause of action for tort in the nature of a conspiracy and affirmed a judgment against all defendants.

In *Sorenson* v. *Chevrolet Motor Co., supra,* the complaint alleged a conspiracy between defendants Chevrolet and Sander, a competitor of plaintiff, to breach plaintiff's agency agreement with Chevrolet, destroy plaintiff's business and acquire it for Sander. The court held that it stated a cause of action against both defendants stating: "If the corporation deliberately breached its contract, it subjected itself to a certain definite liability to plaintiff but that liability rests on a cause of action other than that mentioned in the complaint." (214 N.W. at p. 755.)

In *Luke* v. *Du Pree, supra,* a complaint for conspiracy by all defendants to breach a contract by one of said defendants to pay plaintiffs certain real estate commissions was held to state a cause of action. The court said: "It is unlawful for others, without lawful excuse, to induce the maker of a contract to break it, or to aid him in its breach; and for the maker and others to combine to break it is a conspiracy, which entitles the other party to the contract to his action against the conspirators for any damage which he may sustain. . . . [I]t may seem anomalous that, if a party to a contract breaks it, and is alone responsible for the breach, he can only be sued in an action ex contractu for the breach; but, if he breaks his contract, and another induces him to break it or conspires with him to break it, or aids him in breaking it, both can be sued ex delicto, on the theory that both are liable for a tort perpetrated in pursuance of a conspiracy to break the contract. But the tendency of modern decisions is to hold them liable as conspirators. This is in harmony with sound morals." (124 S.E. at pp. 16-17.)

In *Wade* v. *Culp, supra,* the court affirmed a judgment against defendants who conspired to procure the breach of a contract entered into by one of said defendants with plaintiff, observing that the case was similar to *Sorenson* v. *Chevrolet Motor Co., supra,* and declaring that "[s]uch conduct on the part of the appellants resulted in a loss to the appellee and their conduct was therefore wrongful and unlawful." (23 N.E.2d at p. 617.)

In *Falstaff Brewing Corp.* v. *Iowa Fruit & Produce Co., supra,* the court affirmed a judgment against defendant for breach of contract and for conspiracy entered into between defendant's sales manager and a third person (apparently not joined as defendant) to breach an agency contract between plaintiff and defendant. The court rejected defendant's claim that there was no conspiracy, stating that the arrangements necessitated joint action on the part of the conspirators and that "[c]learly, such combined action was a conspiracy. Clearly, it was a conspiracy which contemplated an unlawful act—the breach of a contract then in force and then being performed by plaintiff." (112 F.2d at p. 107.)

We think that the better reasoned cases hold that an action for conspiracy to induce a breach of contract will lie against a party to the contract who is included among the defendant-conspirators. Such cases, in our view, rest solidly on the principle that all who are involved in the common scheme are

jointly and severally responsible for the ensuing wrong. This of course is the broad formative principle in the California cases on conspiracy (see, for example, *Mox Incorporated* v. *Woods, supra,* 202 Cal. 675, 678; *Agnew* v. *Parks, supra,* 172 Cal.App.2d 756, 762; *Schaefer* v. *Berinstein, supra,* 140 Cal. App.2d 278, 293) albeit that no California case has yet squarely applied it to the problem now before us. Nevertheless we feel that the reach of the principle in fastening the liability derived from the conspiracy on the contracting party is detectable in *California Auto Court Assn.* v. *Cohn, supra,* 98 Cal.App.2d 145 and implicit in the court's conclusion in *James* v. *Herbert, supra,* 149 Cal.App.2d 741.

Against the backdrop of *California Auto* and *James* we find the authorities from other jurisdictions above discussed particularly persuasive. To hold the contracting party along with his confederates liable in tort seems to us not only to be within the compass of the above principle but also consonant with good morals. We perceive no fatal anomaly in the circumstance that the plaintiff may, as he does here, seek relief in an independent cause of action on the contract. It happens frequently that the wrongful act at the center of the controversy may partake of the nature of both tort and contract and in such event the wronged plaintiff may sue in tort for the wrongful invasion of his rights and also sue for breach of contract. (Cf. *Cason* v. *Glass Bottle Blowers Assn.* (1951) 37 Cal.2d 134, 142 [231 P.2d 6, 21 A.L.R.2d 1387].) ▮ A complaint may in different counts set forth inconsistent causes of action. (*Faulkner* v. *California Toll Bridge Authority* (1953) 40 Cal.2d 317, 328 [253 P.2d 659].)

▮ We hold that a cause of action for conspiracy will lie against the defendant Company.

2. *Corporate agents as conspirators.*

▮ Defendants assert that the defendants Hitke and Smith cannot be joined as conspirators. We think this point is well taken. ▮ Agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage. (*Bliss* v. *Southern Pacific Co.* (1958) 212 Ore. 634 [321 P.2d 324, 328-329]; *May* v. *Santa Fe Trail Transp. Co., supra,* 189 Kan. 419 [370 P.2d 390, 395].) This rule derives from the principle that ordinarily corporate agents and employees acting for and on behalf of the corporation cannot be held liable for inducing a breach of the corporation's con-

tract since being in a confidential relationship to the corporation their action in this respect is privileged. The inducement of the breach to be actionable must be both wrongful and unprivileged. (*Imperial Ice Co.* v. *Rossier* (1941) 18 Cal.2d 33, 38 [112 P.2d 631]; *Lawless* v. *Brotherhood of Painters* (1956) 143 Cal.App.2d 474, 478 [300 P.2d 159]; *May* v. *Santa Fe Trail Transp. Co., supra*; 30 Am. Jur. 82; 26 A.L.R.2d 1270-1271.)

 In the instant case, it is alleged in the second count that at all times mentioned defendants Hitke and Smith were "employees, agents and representatives" of their respective corporations and "were acting within the course and scope of their said employment. . . ." There is no allegation that they were acting in any other capacity. There is no allegation expressly stating or from which it can be reasonably inferred that they were acting for their individual advantage. The allegation that the acts of these defendants were motivated by malice and were intentional would not impose liability. (*Imperial Ice Co.* v. *Rossier, supra.*)

We hold that the second count fails to set forth facts sufficient to constitute a cause of action against defendants Hitke and Smith.

3. *Causal connection between conspiracy and discharge.*

 Defendants' contention that plantiff has failed to allege a causal connection between the conspiracy and his discharge must succumb to a fair reading of the allegations of the second count already set forth by us. They allege a conspiracy for the purpose of securing plaintiff's discharge, the performance of certain acts pursuant thereto and finally that the defendant Company "in furtherance of said agreement did on March 2, 1960, without cause, wrongfully discharge plaintiff. . . ." This is a plain and clear statement that the discharge resulted from the conspiracy.

4. *Failure to reallege paragraph VIII of first count.*

 Defendants make much of the circumstance that plaintiff failed to reallege in the second count paragraph VIII of the first count which alleged that plaintiff exhausted his administrative remedies under the union agreement. Plaintiff asserts that this was probably an inadvertence on plaintiff's part and states that the first mention made of the point was in the briefs filed herein. Plaintiff further contends that such allegation is not vital to the second count anyhow,

since he has repleaded therein paragraph IX of the first count which alleges performance by plaintiff of all the terms and conditions imposed on him by the union agreement. We agree. The agreement provides for administrative remedies to be pursued by an employee. It is obvious that if plaintiff performed all the terms and conditions of the agreement, he fulfilled the requirements of the contract dealing with the exhaustion of administrative remedies.[16]

5. *Sufficiency of allegations of second count.*

■■■■■ Defendants' contention that the second count by re-alleging all but two paragraphs of the first count is "subject to all of the insufficiencies" of the first count must fail in view of the conclusions which we have reached as to the sufficiency of the first count.

We therefore turn to the question of the sufficiency of the conspiracy allegations themselves. To state such a cause of action, as already pointed out, the complaint must allege (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto and (3) the resulting damage. We have heretofore set forth and need not here repeat the allegations of the second count to the effect that prior to January 21, 1960, the defendant Company conspired with its codefendants to bring false charges against plaintiff and to deprive plaintiff of a fair hearing on such charges for the purpose of securing his discharge in violation of the union agreement. This is a sufficient statement of the first element of the cause of action. (See *California Auto Court Assn.* v. *Cohn, supra,* 98 Cal.App.2d 145, 147, 149; *Greenwood* v. *Mooradian* (1955) 137 Cal.App.2d 532, 537-538 [290 P.2d 955].) The second count thereafter alleges that the defendant Association (for reasons already stated we omit reference to defendant Smith and other agents) pursuant to the agreement induced certain persons to give false statements and to appear and testify falsely about plaintiff; and that the defendant Company, pursuant to the agreement, made false charges against plaintiff, knowingly received such false statements and testimony, deprived plaintiff of a fair hearing and finally discharged him without cause. It is clear that these are wrongful acts which work an invasion of

---

[16]If there were any doubt in our minds of the adequacy of the repleaded paragraph IX to dispose of the problem, we would dispose of it by permitting plaintiff to reallege paragraph VIII by appropriate reference, since under such circumstances we would regard the point as merely technical.

plaintiff's right to continue in employment according to the provisions of the collective bargaining agreement. It is also clear that such participant in such acts is responsible as a joint tortfeasor whether or not it was a direct actor in respect to each of them. (See *Mox Incorporated* v. *Woods, supra,* 202 Cal. 675, 677-678; *Greenwood* v. *Mooradian, supra.*) Thus, there is also a sufficient allegation of the second element of the cause of action. No question is raised as to the allegation of the third element of damage.

We conclude that the second count states facts sufficient to constitute a cause of action against defendants Company and Association.

We therefore turn to the special demurrers to the second count. They assert that such count is uncertain, ambiguous, and unintelligible. In respect to those allegations of the first count realleged in the second count, such demurrers reassert the specifications made by the Company's special demurrer to the first count. We have already determined that the first count is good as against the special demurrer and need not pursue this matter further.

Additionally the special demurrer of defendants Company and Hitke claims that the second count fails to allege "in what manner and in what respects" defendants conspired, brought false charges, wrongfully accused plaintiff, and deprived him of a fair hearing; in what manner the codefendants aided and abetted defendant Company; and in what manner the defendants' acts were with malice or wrongful purpose. It is also claimed that the "[t]ime, place, and circumstance" with respect to the conspiracy are uncertain.

The special demurrer of defendants Association and Smith to a great extent repeats the specifications set forth by defendants Company and Hitke. In addition it claims that the first count as realleged in the second count fails to allege that the Association and Smith had anything to do with plaintiff's discharge; that such repleaded count does not allege "in what manner and in what particulars" various acts were done; that the second count fails to state any "relationship, obligation, right or duty" between plaintiff and such defendants; fails to allege material facts by which such defendants conspired to bring false charges against plaintiff, to wrongfully accuse him and to deprive him of a fair hearing; and fails to allege facts which constitute an unlawful agreement pursuant to which such demurring defendants induced certain persons to give false statements and testimony and

pursuant to which they aided and abetted defendant Company to knowingly receive such statements and testimony, deprive plaintiff of a fair hearing and discharge him.

Since we have concluded that the second count fails to state facts sufficient to constitute a cause of action against Hitke and Smith, our inquiry on the special demurrers should be centered on the defendants Company and Association. Here our observations on the special demurrer to the first count and the authorities noted therewith are largely applicable. In the light of our discussion of the allegations pertinent to the conspiracy and under the applicable rules (see authorities cited *ante*), we think that the matters to which these special demurrers are directed are set forth with sufficient clarity and particularity. In our view the pleading under attack presents the essential facts with reasonable specificity to apprise defendants Company and Association of the "nature, source, and extent" of the cause of action. (*Goldstein* v. *Healy, supra,* 187 Cal. 206, 210.) Defendant Association protests that no alleged facts show that it had anything to do with plaintiff's discharge or that any relationship existed between it and plaintiff. As we have already pointed out, there is no requirement that such facts exist in order to make defendant Association liable. As a participant in the common design, defendant Association is responsible as a joint tortfeasor since liability is fastened on him who agreed to the plan to commit the wrong as well as on him who actually carried it out. (*Mox Incorporated* v. *Woods, supra,* 202 Cal. 675, 678.)

In summary the first count of the complaint is good against the Southern Pacific Company, the sole defendant therein charged, and the second count is good against the defendants Southern Pacific Company and Association of American Railroads but not good against defendants Harry J. Hitke and W. A. Smith. However defendants Company and Hitke filed a joint demurrer and defendant Association and Smith filed a separate demurrer also joint as to them. A joint demurrer by two defendants must be overruled if the complaint is good against either of them. (*Asevado* v. *Orr* (1893) 100 Cal. 293, 300 [34 P. 777]; *Cameron* v. *City of Richmond* (1919) 42 Cal.App. 262, 263 [183 P. 604]; *Greenwood* v. *Mooradian, supra,* 137 Cal.App.2d 532, 546; *Agnew* v. *Cronin* (1957) 148 Cal.App.2d 117, 130 [306 P.2d 527]; 2 Chadbourn, Grossman, Van Alstyne, *op. cit.,* § 1213, pp. 416-418; 2 Witkin, Cal. Procedure, p. 1476.)

The judgment is reversed as to all defendants and the cause remanded with directions to the trial court to overrule the demurrers of all defendants and to grant a reasonable time within which said defendants may answer if so advised.

Bray, P. J., and Molinari, J., concurred.