**ELGIN, JOLIET AND EASTERN RAILWAY COMPANY, Plaintiff-Appellant,**

v.

**BROTHERHOOD OF RAILROAD TRAINMEN et al., Defendants-Appellees.**

No. 13444.

United States Court of Appeals Seventh Circuit.

May 4, 1962.

Rehearing Denied June 7, 1962.

Paul R. Conaghan, Chicago, Ill., Richard B. Ogilvie, Jerome Gilson, J. R. Marsh, Ray F. Drexler, Chicago, Ill., for plaintiff-appellant. Stevenson, Conaghan, Hackbert, Rooks & Pitts, Chicago, Ill., of counsel.

Burke Williamson, John J. Naughton, Jack A. Williamson, Adams Williamson & Turney, Chicago, Ill., Heiss, Day & Bennett, Cleveland, Ohio, Elliott, Shuttleworth & Ingersoll, Cedar Rapids, Iowa, for defendants-appellees.

Before DUFFY, KNOCH and KILEY, Circuit Judges.

DUFFY, Circuit Judge.

This suit was brought against the Brotherhood of Railroad Trainmen (BRT), Brotherhood of Locomotive Firemen and Enginemen (BLFE) and Order of Railway Conductors and Brakemen (ORCB) to restrain a strike scheduled to commence at 6 a. m. on May 20, 1961.

The District Court entered a temporary restraining order on May 19, 1961. This restraining order was continued in effect by agreement of the parties, pending final action by the District Court after a hearing on the merits.

On June 21, 1961, after the hearing on the merits, the District Court entered Findings of Fact and Conclusions of Law favorable to the defendants; the temporary restraining order was dissolved and the action was dismissed at plaintiff's costs. Plaintiff forthwith filed a notice of appeal and moved for an injunction restraining defendants from striking pending said appeal. On June 22, 1961, the District Court granted plaintiff's motion for an injunction pending appeal stating that it did so pursuant to the provisions of Rule 62(c), F.R.Civ. P., 28 U.S.C.A., "and the inherent powers of the Court." Defendant brotherhoods appealed from the order of June 22, 1961 granting the injunction pending appeal. These appeals have been designated in this Court as Nos. 13445 and 13447, and are being separately considered. 7 Cir., 302 F.2d 545.

Plaintiff is a common carrier engaged in interstate commerce by railroad and is a "carrier" within the meaning of that term as defined in the Railway Labor Act. Plaintiff's railroad system connects and interchanges freight with thirty-three common carriers by rail which enter the city of Chicago. Its capital stock is owned by the United States Steel Corporation.

The defendant brotherhoods are labor organizations, national in scope, and are subject to the provisions of the Railway Labor Act. The BRT is exclusive bargaining representative for 1200 employees, the BLFE for 400 firemen and the ORCB for 55 road conductors.

The dispute between the parties concerns non-contributory pensions supplemental to Railroad Retirement Act benefits. A pension plan known as II–B had expired by its terms on October 31, 1959. This pension plan as well as a previous plan was included in collective bargaining agreements between plaintiff and each of the defendants, BRT, BLFE and ORCB, on behalf of the respective class or craft of plaintiff's employees represented by such labor organizations.

The brotherhood defendants sought pension benefits different from and in addition to those available under II–B. On October 1, 1959, each brotherhood served notice on plaintiff pursuant to Section 6 of the Railway Labor Act. The notice was as follows:

"Kindly consider this as a thirty (30) day notice under the provisions of Section 6 of the amended Railway Labor Act to extend the current Non-Contributory Pension Agreement [II–B] between the Elgin, Joliet and Eastern Railway Company and the [BRT, ORCB, and BLFE] effective November 1, 1957, until such date when the United States Steel Workers reach an agreement on a Non-Contributory Pension Plan, after which date, the above referred to Organization[s] shall have the option of substituting the new pension plan (being negotiated by the United States Steel Workers) in place of the pension plan now in effect covered by the aforementioned pension agreement; and/or also have the option to renew, modify, or change the above referred to pension agreement as may be deemed advisable."

All three brotherhoods requested joint handling of their notices, and this procedure was followed between the plaintiff and the brotherhoods in the collective bargaining conferences which followed. Paul H. Verd, Vice President of plaintiff, was its principal negotiator. He offered to grant extensions of plan II–B for periods of three years, two years or one year, but refused to consider extensions for shorter periods as requested by the brotherhoods.

At the date of the service of the Section 6 notice, a strike was in progress called by employees of United States Steel. This strike was settled about January 1, 1960, and in the settlement it was agreed there would be changes in the non-contributory pension plan between United

States Steel Corporation and its employees represented by United States Steel Workers. A copy of the new plan was not available to the brotherhoods representing plaintiff's employees for some months thereafter. This new plan was known as Plan II–CR and was not discussed by Mr. Verd until the joint conference held on February 23, 1961.

During the collective bargaining conferences, the brotherhoods urged plaintiff to restore or increase benefits theretofore paid to retired employees of plaintiff. Mr. Verd was of the opinion that he was not required by the Railway Labor Act to bargain with employees of plaintiff concerning the pension plan sought by the brotherhoods. However, he did, in fact, bargain upon the plan.

Joint conferences with respect to the Section 6 notice were held on October 26 and 27, 1959, without an agreement being reached. Largely due to the steel strike, a third conference was not held until July 29, 1960. Again, no agreement was reached.

. The brotherhoods then requested intervention of the National Mediation Board. On August 22, 1960, the Board advised plaintiff and the brotherhoods that it had taken jurisdiction. The first joint mediation session was held on November 30, 1960. No further meetings were held until February 23, 1961. The final joint mediation conference was held on February 27, 1961, but no agreement was reached.

On March 8, 1961, the National Mediation Board proffered arbitration. The plaintiff accepted, but on March 10, 1961, all of the brotherhoods jointly rejected arbitration.

By letters dated March 13 and March 16, 1961, mediation services were terminated by the Board. On April 14, 1961, plaintiff sent telegrams to officials of defendant brotherhoods requesting further conferences which were held on April 19, 21 and 24, 1961, without an agreement being reached.

On May 16, 1961, the Board, by telegram, advised all parties that defendants had authorized a strike to begin May 20, 1961, at 6 a. m. and requested the brotherhoods to defer strike action. However, the brotherhoods refused to comply with this request. On May 18, 1961, at 10 p. m., the National Executive Officials of the three defendant brotherhoods posted a notice on plaintiff's property, giving authority for a strike effective Saturday, May 20, 1961, at 6 a. m.

Although plaintiff's brief lists twenty-eight separately stated "contested issues," we think the issues in this case may be considered under five subheads.

### I

Plaintiff contends the strike scheduled for May 20, 1961, was illegal because the National Mediation Board had not completed its emergency mediation. Plaintiff argues the Mediation Board's request of May 16, 1961 for further meeting, started the running of a "reasonable time" during which the strike would be illegal. Plaintiff does not suggest what period of time would meet such a test. It does not contend that any second 30-day *status quo* period was involved. The District Court pointed out that the resumption of mediation was on the agreement that defendants did not waive their right to strike pursuant to notices already served. We hold this first contention of plaintiff must be overruled.

### II

Plaintiff also contends that the demands of the defendant brotherhoods regarding pension agreements were not a subject of mandatory collective bargaining because not included within the phrase "rates of pay, rules, and working conditions" as those terms are used in Sections 2 First, 2 Seventh and 6 of the Railway Labor Act (45 U.S.C.A. §§ 152, 156). As a corollary to this contention, plaintiff alleges that the brotherhoods may not lawfully strike for increased non-contributory pensions for retired persons.

The Railway Labor Act does not specifically mention pension plans as a subject of mandatory collective bargaining.

However, this Court, in Inland Steel Co. v. N.L.R.B., 7 Cir., 170 F.2d 247, construing similar language in the National Labor Relations Act, held that pension plans were properly the subject of mandatory collective bargaining. In spite of the difference in terminology between the National Labor Relations Act and the Railway Labor Act, we think the conclusion reached in the Inland case is applicable here. McMullans et al. v. Kansas, Oklahoma and Gulf Railway Co., Inc., et al., 10 Cir., 229 F.2d 50, 54–55.

We do not reach the contention that the brotherhoods may not lawfully strike for increased non-contributory pensions for retired persons. The District Court in its Findings of Fact stated, " * * * Neither the Section 6 Notices served by the labor organizations nor the strike ballots taken by them referred to retired employees. Officers of the BRT, ORCB, and BLFE never at any time threatened to strike against the plaintiff on account of the position of such retired employees. * * * *" In the absence of a showing that such Findings of Fact were clearly erroneous (Rule 52(a), F.R.Civ.P.), this Court is bound by them and the issue of the lawfulness of a strike to obtain increased pension benefits for retired employees is, in fact, a moot question.

### III

■ Plaintiff further contends that the scheduled strike was illegal in that the brotherhoods failed to make every reasonable effort to settle all disputes and did not accept arbitration.

Arbitration under the Railway Labor Act is voluntary, not compulsory. Section 7 First of the Railway Labor Act (45 U.S.C.A. § 157) provides in part: "That the failure or refusal of either party to submit a controversy to arbitration shall not be construed as a violation of any legal obligation imposed upon such party by the terms of this chapter or otherwise."

While it is possible that a refusal to arbitrate might be a factor in determining whether every reasonable effort was made to settle all disputes, the refusal to arbitrate in and of itself does not constitute a failure to make every reasonable effort to settle all disputes. To hold that the failure to arbitrate, per se, is the failure to exert every reasonable effort to make agreements and settle all disputes, would make a nullity of Section 7.

■ Plaintiff relies on Brotherhood of Railroad Trainmen, Enterprise Lodge, No. 27 et al. v. Toledo, Peoria & Western Railroad, 321 U.S. 50, 64 S.Ct. 413, 88 L.Ed. 534. The Supreme Court, in that case, held that Section 8 of the Norris-LaGuardia Act (29 U.S.C.A. § 108) would bar a complainant from injunctive relief if he had not submitted the dispute to arbitration. The Court stated, at page 63, 64 S.Ct. at page 420, 88 L. Ed. 534:

"Respondent's failure or refusal to arbitrate has not violated any obligation imposed upon it, whether by the Railway Labor Act or by the Norris-LaGuardia Act. No one has recourse against it by any legal means on account of this failure. Respondent is free to arbitrate or not, as it chooses. But if it refuses, it loses the legal right to have an injunction issued by a federal court or, to put the matter more accurately, it fails to perfect the right to such relief. This is not compulsory arbitration. It is compulsory choice between the right to decline arbitration and the right to have the aid of equity in a federal court."

It must be conceded that the language used by the Court, " * * * and the right to have the aid of equity in a federal court" is very broad. However, construing it in context with the other language used in the paragraph hereinbefore quoted, we hold Section 8 is not applicable to the brotherhoods in the case at bar. The brotherhoods were not seeking injunctive relief and failure to arbitrate did not violate the Railway Labor Act.

■ The application of Section 4 of the Norris-LaGuardia Act (29 U.S.C.A. § 104) is not affected by the failure of the brotherhoods to arbitrate. Section 4 is

applicable to the dispute under consideration and it operates so as to prevent the granting of injunctive relief to plaintiff.

We hold that plaintiff's argument that defendant brotherhoods failed to make every reasonable effort to settle the dispute is without merit.

## IV

 Plaintiff argues that conduct which violates the provisions of the Railway Labor Act may be enjoined in spite. of the Norris-LaGuardia Act. However, it is admitted by plaintiff that the disputed question is a "major dispute." The Supreme Court has held that Section 4 of the Norris-LaGuardia Act is applicable to "major disputes" within the meaning of the Railway Labor Act. Order of Railroad Telegraphers et al. v. Chicago & North Western Railway Co., 362 U.S. 330, 80 S.Ct. 761, 4 L.Ed.2d 774.

This question needs no further discussion here. Plaintiff's argument is based upon the proposition that the brotherhoods' conduct in this case violated the Railway Labor Act. We have held to the contrary. We hold the District Court was correct in holding that it was deprived of jurisdiction to issue an injunction by reason of the provisions of the Norris-LaGuardia Act.

## V

Plaintiff urges error on the part of the trial court in awarding attorney's fees to the defendant brotherhoods. We find this contention to be without merit. Section 7 of the Norris-LaGuardia Act (29 U.S.C.A. § 107) provides in part:

> "No temporary restraining order or temporary injunction shall be issued except on condition that complainant shall first file an undertaking with adequate security in an amount to be fixed by the court sufficient to recompense those enjoined for any loss, expense, or damage caused by the improvident or erroneous issuance of such order or injunction, including all reasonable costs (together with a reasonable attorney's fee) and expense of defense

against the order or against the granting of any injunctive relief sought in the same proceeding and subsequently denied by the court."

There was no error in the awarding of attorney's fees to the defendant brotherhoods.

We have considered all of plaintiff's contentions and find them to be without merit.

The judgment of the District Court is Affirmed.