ALTON & SOUTHERN RAILWAY
CO., et al., Plaintiffs,

v.

BROTHERHOOD OF MAINTENANCE
OF WAY EMPLOYES, Defendant.

Civ. A. No. 94–2365.

United States District Court,
District of Columbia.

July 10, 1995.

Ralph Joseph Moore, Jr. and Dorothy Eugenia Langan, Shea & Gardner, Washington, DC, for plaintiffs and counterdefendants.

John O'Brien Clarke, Jr. and William Grattan Mahoney, Highsaw, Mahoney & Clarke, Washington, DC, for defendant and counterclaimants.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Pending before the Court is the Motion of Defendant BMWE to Alter or Amend Judgment. The defendant Brotherhood of Maintenance of Way Employes ("BMWE") asks this Court to reconsider its decision of April 28, 1995, in which it enjoined the BMWE and others associated with the BMWE from engaging in strikes or other forms of self help against the plaintiff rail carriers relating to disputes arising from the notices served in the round of collective bargaining that began on or about November 1, 1994. The plaintiffs have opposed this motion. After carefully reviewing the parties' arguments, the applicable legal authority, and the record in, this case, the Court rejects most of the arguments raised in the BMWE's motion. However, the Court will grant the BMWE's motion in part by increasing the bond that the plaintiffs must post.

## I. BACKGROUND

The Court has already issued two Memorandum Opinions in this case and will not reiterate the entire background of this litigation.[1] The plaintiffs are a group of 29 rail common carriers. The defendant BMWE is a union representing workers employed by the plaintiff carriers. The plaintiff carriers have designated the National Carriers' Conference Committee to act as their authorized national multi-employer bargaining agent to represent them in negotiations with railway labor unions, including the BMWE. The BMWE rejects multi-employer bargaining, and seeks to bargain on a local basis with each individual carrier. The dispute in this case revolves around whether the carriers can insist upon multi-employer bargaining or whether the BMWE can insist upon carrier-by-carrier bargaining. This presents a difficult legal question which requires the Court

---

1. The Court's first opinion in this case is not published. *See Alton & Southern Ry. Co. v. Brotherhood of Maintenance of Way Employes,* Civil Action No. 94–2365, 1995 WL 338544, 1995 U.S.Dist. LEXIS 2740 (D.D.C. Feb. 20, 1995) (denying cross-motions for preliminary injunction), *aff'd,* No. 95–7042, 1995 WL 311450, 1995 U.S.App. LEXIS 12153 (D.C.Cir. Apr. 25, 1995) and *Alton & Southern Ry. Co. v. Brotherhood of* *Maintenance of Way Employes,* Civil Action No. 94–2365, 1995 WL 338544 (D.D.C. Feb. 21, 1995) (same), *aff'd,* No. 95–7042, 1995 WL 311450 (D.C.Cir. Apr. 25, 1995). The Court's second opinion is published. *See Alton & Southern Ry. Co. v. Brotherhood of Maintenance of Way Employes,* 883 F.Supp. 755 (D.D.C.1995) (granting carriers' request for preliminary injunction).

to analyze various provisions of the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("RLA").

On April 28, 1995, the Court granted the plaintiff carriers' motion for a preliminary injunction and enjoined the BMWE from engaging in any form of self help related to the issue in dispute until this Court has ruled upon the plaintiffs' request for a permanent injunction.[2] The BMWE asks this Court to reconsider several aspects of its decision to issue the preliminary injunction. Specifically, the BMWE argues that the plaintiffs lack standing to obtain the injunction, that the injunction is overly broad, and that the nominal bond posted in this case is insufficient to protect the BMWE.

## II. DISCUSSION

■ The BMWE brings this motion pursuant to Fed.R.Civ.P. 59(e). This rule permits a party to ask the Court to alter or amend a judgment within 10 days after the entry of the judgment. Because the Court's preliminary injunction is an appealable order, the parties appear to agree that the injunction is a judgment within the meaning of Rule 59(e). Such motions are not vehicles for advancing theories or arguments that were not advanced earlier, but must be based on an intervening change in controlling law, the availability of new evidence that was previously unavailable, or a need to correct clear error or correct manifest injustice. *Natural Resources Defense Council, Inc. v. United States Envtl. Protection Agency,* 705 F.Supp. 698, 701–02 (D.D.C.), *vacated on other grounds,* 707 F.Supp. 3 (D.D.C.1989). Reviewing the BMWE's arguments in light of the standard for Rule 59(e) motions, the Court finds that most of the union's arguments fail to justify altering or amending the Court's injunction. However, the Court finds that it is proper to amend its injunction to increase the bond that the plaintiffs must post in this case.

### A. The Plaintiffs' Standing to Obtain the Injunction

■ The BMWE argues that this Court erred when it held that the carriers had standing to seek a preliminary injunction. The BMWE insists that the Norris–LaGuardia Act, 29 U.S.C. §§ 101 *et seq.*, deprives the carriers of standing to seek an injunction in this case. This was the primary argument that the BMWE made against the injunction in its papers and at the Court's hearing on April 26, 1995. The Court carefully evaluated this argument and addressed the standing issue at length in its Memorandum Opinion of April 28, 1995, 883 F.Supp. 755 (D.D.C. 1995). Although the BMWE asserts that this Court's earlier analysis was incorrect, the Court is not persuaded that it clearly erred in finding that the carriers had standing to obtain the injunction.

Section 8 of the Norris–LaGuardia Act prohibits a federal court from issuing an injunction when the party seeking the injunction "has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration." 29 U.S.C. § 108. As the Court explained in its earlier Memorandum Opinion, it cannot find that the carriers have failed to comply with any of their legal obligations. Rather, the carriers have relied upon well-settled law in this circuit as a basis for their position that they may insist upon multi-employer bargaining in this case. *See Brotherhood of R.R. Trainmen v. Atlantic Coast Line R.R. Co.,* 383 F.2d 225, 229 (D.C.Cir.1967), *cert. denied,* 389 U.S. 1047, 88 S.Ct. 790, 19 L.Ed.2d 839 (1968). Similarly, the Court has found that because of the carriers' good faith reliance upon this authority, it cannot find that the carriers have failed to make every reasonable effort to settle the instant dispute. The BMWE has proffered no argument that persuades the Court that its prior interpretation of *Atlantic Coast Line,* the RLA or § 8 of the Norris–LaGuardia Act is clearly incorrect. Additionally, the BMWE has failed to convince the Court that its alternative holdings on the standing issue

2. The parties are currently briefing the permanent injunction issue. Under the current briefing schedule, the matter should be ripe for decision by the end of July, 1995.

were clearly incorrect.[3] Therefore, the Court denies this aspect of the BMWE's motion and affirms its earlier finding that the carriers had standing to seek the preliminary injunction that was issued on April 28, 1995.[4]

### B. Breadth of the Injunction

■ The BMWE next argues that the Court should amend its preliminary injunction because the injunction improperly orders the union to take affirmative action to enforce this Court's order. Specifically, the BMWE challenges language in the preliminary injunction that states:

> the defendant shall make all reasonable efforts to prevent its divisions, lodges, locals, officers, General Chairmen, agents, employees, members, and all persons acting in concert with any of them from engaging in conduct enjoined by this injunction, and shall discipline those who engage in such conduct.

*Alton & Southern,* 883 F.Supp. at 766.

Although the language in the Court's injunction is quite similar to the language proposed by the plaintiffs, the union never challenged the proposed language prior to the issuance of the injunction. Now, however, the BMWE asserts that the above-quoted portion of the Court's injunction is overly broad. It argues that by requiring the BMWE to take reasonable efforts to prevent its members from violating the injunction and by requiring the union to discipline those who violate the injunction, the Court has violated the Norris–LaGuardia Act. The BMWE argues that there is no evidentiary basis for the Court's decision to direct the union to take affirmative actions to enforce the order. The Court has carefully considered the BMWE's arguments and finds them to be without merit.

In this case, the Court does not consider its injunction to be overly broad or to conflict with the Norris–LaGuardia Act. However, even if some conflict existed, the Supreme Court has made it clear that competing provisions of the Norris–LaGuardia Act must yield to the demands of the RLA. Although the BMWE relies heavily upon the text of the Norris–LaGuardia Act and cases interpreting the Act, the union appears to ignore the Supreme Court's statement that:

> the Norris–LaGuardia Act cannot be read alone in matters dealing with railway labor disputes. There must be an accommodation of that statute and the Railway Labor Act so that the obvious purpose in the enactment of each is preserved.

*Brotherhood of R.R. Trainmen v. Chicago River & Indiana R.R. Co.,* 353 U.S. 30, 40, 77 S.Ct. 635, 640, 1 L.Ed.2d 622 (1957). Here, when read in light of the RLA, the Norris–LaGuardia Act provides no bar to the Court's injunction.

■ As this Court noted when it granted the plaintiffs' request for a preliminary injunction, the purpose of the RLA is to prevent railroad strikes' and interruptions to interstate commerce. *Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union,* 396 U.S. 142, 148, 90 S.Ct. 294, 298, 24 L.Ed.2d 325 (1969). The purpose of § 9 of the Norris–LaGuardia Act, on the other hand, is to "forbid blanket injunctions against labor unions, which are usually prohibitory in form, and to confine the injunction to the particular act complained of and found by the court." *Virginian Ry. Co. v. System Fed'n No. 40,* 300 U.S. 515, 563, 57 S.Ct. 592, 607, 81 L.Ed. 789 (1937). The Court finds that its injunction is sufficiently confined to the act complained of in the plaintiffs' complaint because it only enjoins self help relating to the disputes arising from the § 6 notices served in

---

**3.** In particular, the Court notes that the BMWE simply misreads the Court's injunction when it argues that the injunction delegated the core legal issue in this case to the National Mediation Board ("NMB"). Although the Court encouraged the parties to use the NMB's services, it specifically noted that the proceedings before the NMB are without prejudice to the parties' positions in this litigation. *Alton & Southern,* 883 F.Supp. at 765 n. 10. In so doing, the Court clearly indicated that it was not improperly delegating the legal issue in this case to the NMB.

**4.** To the extent that the BMWE seeks to persuade the Court that it has misread the *Atlantic Coast Line* case or to assert that this Court should reject the decisions of the Court of Appeals, the Court finds that it is preferable to resolve these matters after the parties have fully briefed the permanent injunction issue.

the most recent round of collective bargaining. It is not the type of blanket injunction that is prohibited by the Norris–LaGuardia Act. To the extent that the injunction requires affirmative action on the part of the union, this affirmative action is required to further the RLA's purpose of preventing interruptions in interstate commerce. The evidence presented to the Court in written materials and at the April 26, 1995, hearing established a sufficient basis for the Court to exercise its discretion to require the BMWE to ensure that its members did not resort to illegal self help. *See Long Island R.R. v. International Ass'n of Machinists,* 874 F.2d 901, 911 (2d Cir.1989) (approving district court injunction directing railroad union to communicate provisions of injunction to union members and to take affirmative steps to prevent disruptions of rail service), *cert. denied,* 493 U.S. 1042, 110 S.Ct. 836, 107 L.Ed.2d 831 (1990).[5] Because the Court does not find that its injunction is impermissibly broad, the BMWE's request to alter the language of the injunction is denied.

### C. Adequacy of the Bond

■ The BMWE also argues that this Court erred in requiring the carriers to post a nominal bond of $1000. The BMWE asserts that the bond is inadequate under § 7 of the Norris–LaGuardia Act, which requires a party obtaining an injunction to:

> file an undertaking with adequate security in an amount to be fixed by the court sufficient to recompense those enjoined for any loss, expense, or damage caused by the improvident or erroneous issuance of such order or injunction, including all reasonable costs (together with a reasonable attorney's fee) and expense of defense against the order or against the granting of any injunctive relief sought in the same

proceeding and subsequently denied by the court.

29 U.S.C. § 107. The BMWE further notes that a party injured by an erroneous injunction has no action for damages in the absence of a bond and is limited to recovering the amount of a bond. *International Ass'n of Machinists and Aerospace Workers v. Eastern Airlines, Inc.,* 925 F.2d 6, 10 (1st Cir. 1991). The BMWE argues that the $1000 bond is insufficient to compensate it for its costs and attorney's fees in the event that the injunction is found to be issued in error. Accordingly, the BMWE seeks a bond of $200,000.

The plaintiffs argue that the nominal bond is appropriate in this case. They point out that the BMWE never objected previously to a nominal bond. They also argue that § 7 of the Norris–LaGuardia Act does not apply to the injunction in this case because the injunction here simply requires the parties to maintain the status quo and refrain from self help in accordance with the RLA. Finally, they argue that § 7 of the Norris–LaGuardia Act is inconsistent with the RLA because it only awards attorney's fees to prevailing parties who oppose injunctions and might serve to deter attempts to enjoin railroad strikes.

The parties have not directed the Court to any cases in this jurisdiction that clearly hold that a party who is injured by an injunction that is erroneously entered pursuant to the RLA may recover costs and attorney's fees under § 7 of the Norris–LaGuardia Act. However, the *Eastern Airlines* case provides the Court with some guidance. In that case, a district court granted an injunction pursuant to the RLA prohibiting an airline from laying off employees pending the disposition of grievances. The First Circuit reversed, finding that the district court lacked jurisdiction to issue an injunction to preserve the status quo. *See International Ass'n of Ma-*

---

5. The BMWE makes several additional arguments against the breadth of the injunction which the Court also finds to be without merit. The union fails to cite a case where a district court's injunction against RLA violations that also required some affirmative action by a union to ensure compliance was struck down because the affirmative action requirement violated the Norris–LaGuardia Act. The union has also failed to suggest how the Court's injunction will im-

pede union self governance. The injunction only orders the BMWE to make "reasonable efforts" to assure that the injunction is obeyed and to discipline individuals who do not obey the injunction. Thus, it does not impinge in any way upon the union's self governance or direct the union to discipline its members without a fair hearing. The injunction simply directs the union to take steps to ensure that its members obey the law.

chinists and Aerospace Workers v. Eastern Air Lines, Inc., 826 F.2d 1141, 1145–51 (1st Cir.1987). Thereafter, the airline moved in the district court for attorney's fees pursuant to § 7 of the Norris–LaGuardia Act. The district court awarded the airline its attorney's fees up to the amount of the bond and the First Circuit affirmed the award of attorney's fees. *Eastern Airlines*, 925 F.2d at 8–10.

The plaintiffs argue that the *Eastern Airlines* case does not stand for the proposition that an injured party in an RLA case can obtain an award of attorney's fees pursuant to § 7 of the Norris–LaGuardia Act because the district court's injunction there had not attempted to enforce a specific mandate of the RLA. However, nothing in the *Eastern Airlines* case suggests that attorney's fees would not have been awarded to the airline if the district court's injunction had erroneously attempted to enforce a specific mandate of the RLA. Thus, it is unclear whether the factual distinction identified by the carriers should have any effect on the Court's analysis. Additionally, the Court notes that the Seventh Circuit has permitted a union to recover attorney's fees from a railroad pursuant to § 7 of the Norris–LaGuardia Act when the union was injured by the issuance of an erroneous temporary restraining order against a threatened strike that allegedly violated the RLA. *See Elgin, Joliet and Eastern Ry. Co. v. Brotherhood of R.R. Trainmen*, 302 F.2d 540, 544 (7th Cir.), *cert. denied*, 371 U.S. 823, 83 S.Ct. 42, 9 L.Ed.2d 63 (1962). These cases suggest that, despite the plaintiffs' arguments, it may be possible for the BMWE to recover attorney's fees pursuant to § 7 of the Norris–LaGuardia Act if this Court's preliminary injunction is later found to have been entered erroneously.

■ The plaintiffs argue that the BMWE has waived its right to request attorney's fees because the union failed to bring the possibility of payment of attorney's fees to the Court's attention prior to the issuance of the preliminary injunction. *See Umeko, Inc. v. New York Coat, Suit, Dress, Rainwear & Allied Workers Union*, 484 F.Supp. 210, 211 (S.D.N.Y.1980) (rejecting claim for attorney's fees under Norris–LaGuardia Act when nei-

ther party had alerted court to possible applicability of Act prior to issuance of temporary restraining order). Although the BMWE did not specifically mention the possibility of recovering attorney's fees prior to the issuance of the injunction in this case, it has argued that the Norris–LaGuardia Act applies to this case. Specifically, it has repeatedly argued that the Act deprives the plaintiffs of standing to seek the injunction at issue here. Although the Court is troubled by the BMWE's failure to raise the bond issue earlier or more clearly, it does not find that the union has waived its opportunity to seek a higher bond based upon § 7 of the Norris–LaGuardia Act.

It appears that the BMWE might be able to recover attorney's fees if the Court's injunction is found to be erroneous and that the BMWE has not waived its right to seek a more substantial bond. Because the BMWE will only be able to recover damages and attorney's fees up to the amount of the bond posted if this Court's injunction is later found to be erroneous, the Court finds that it would be manifestly unjust to limit the BMWE's potential recovery to $1,000. Therefore, the Court will grant the BMWE's request and will direct the plaintiffs to post a larger bond.

■ The next task before the Court is to determine an appropriate bond. The BMWE has requested a bond of $200,000. In support of this request, the union's counsel has submitted a declaration indicating that his firm has already billed the BMWE $121,954.43 for services incurred in connection with representing the BMWE. However, counsel has admitted that only about $40,000 of the billing has been for work connected with the preliminary injunction at issue here. Thus, it does not appear that a bond of $200,000 is appropriate. However, recognizing that counsel may incur substantial additional costs if the preliminary injunction is appealed, the Court will modify its injunction and direct the plaintiffs to post a bond of $100,000. It appears to the Court that this sum should be adequate security to compensate the BMWE for any losses or other expenses incurred as a result of this injunction if it is found to be erroneous.

**652**

## III. CONCLUSION

The Court has carefully reviewed the arguments made in the BMWE's motion to alter or amend. The Court finds that the plaintiffs had standing to seek and obtain the preliminary injunction that was issued on April 28, 1995. Additionally, the Court finds that the injunction is not overly broad. However, the Court will increase the bond in this case from the nominal bond of $1,000 to $100,000. In making this change, the Court does not intend to suggest that it erred in issuing the preliminary injunction on April 28, 1995. It also does not intend to indicate whether the carriers or the BMWE will ultimately prevail in this action. The Court cannot make any further determination on the merits until it has carefully reviewed the parties' dispositive motions.

## *ORDER*

For the reasons expressed in the Court's Memorandum Opinion, it is this 10th day of July, 1995, hereby

ORDERED that the Motion of Defendant BMWE to Alter or Amend Judgment is GRANTED in part and DENIED in part; and it is further

ORDERED that the Court's injunction of April 28, 1995, is amended; and it is further

ORDERED that the defendant, its divisions, lodges, locals, officers, General Chairmen, agents, employees, members, and all persons acting in concert with any of them, be, and they hereby are, preliminarily enjoined, until the Court acts finally on the plaintiffs' prayer for a permanent injunction, from authorizing, encouraging, permitting, calling, engaging in or continuing any strikes, picketing, work stoppages, or other self help against the plaintiffs relating to the dispute or disputes arising from the § 6 notices served in the round of bargaining that commenced on or about November 1, 1994, before the expiration of thirty days following termination of mediation by the National Mediation Board under § 5 of the Railway Labor Act ("RLA"), and completion of emergency board procedures thereafter if an emergency board is established under § 10 of the RLA; and it is further

ORDERED that the defendant shall make all reasonable efforts to prevent its divisions, lodges, locals, officers, General Chairmen, agents, employees, members, and all persons acting in concert with any of them from engaging in conduct enjoined by this injunction, and shall discipline those who engage in such conduct; and it is further

ORDERED that within 24 hours after this Order issues, an undertaking in the sum of $100,000, or cash in that amount, be filed to make good such damages not to exceed said sum as may be entered or sustained by anyone who is found to be wrongfully enjoined or restrained; and it is further

ORDERED that this preliminary injunction may be served by any person over the age of 18 years selected for the purpose by a plaintiff.